CHICAGO AND ALTON R. R. COMPANY

*v.*

CHARLES GRETZNER.

1. WITNESSES—*weight given to testimony of.* In determining the weight of testimony between two witnesses, the preponderance should be given to the one whose advantages for being correctly informed as to the matters in controversy are the best.

2. SAME.—*credibility of.* A jury cannot wilfully, or from mere caprice, disregard the testimony of an unimpeached witness. While they may judge of the credibility of a witness, they must exercise their judgment while doing so, and not their will merely.

3. NEW TRIAL—*verdict against the evidence.* Where there is a strong preponderance over that, on which a verdict is based, such verdict will be set aside, and especially so, when it appears that injustice has been done.

4. NEGLIGENCE—*where plaintiff's negligence concurs in producing injury.* In an action for negligence, where the facts proved show great negligence on the part of the plaintiff, the proper question to be submitted to the jury is, did plaintiff's negligence materially contribute to the injury, or rather was it so slight, and that of defendant so gross in comparison, as to incline the balance in plaintiff's favor and entitle him to a verdict.

5. SAME—*concerning carelessness of persons in crossing a railroad track.* It is the duty of every person about to cross a railroad track, to approach it cautiously and ascertain if there is danger in crossing, as all such persons are bound to know that such an undertaking is dangerous, and they must take all proper precaution to avoid accidents in so doing, otherwise, they cannot recover for an injury thereby received. Both parties must use care.

6. EVIDENCE—*positive evidence when entitled to more weight than negative.* It is an established rule, that positive evidence as to any fact not improbable in itself, is entitled to more weight, than negative evidence in relation to such fact.

7. NEGLIGENCE—*comparative—doctrine of—modified.* In the case of *C. B. & Q. R. R. Co.* v. *Dewey,* 26 Ill. 255 ; *Same* v. *Hazzard,* 26 ib. 373, and *Galena & C. U. R. R. Co.* v. *Jacobs,* 20 ib. 478, the doctrine of comparative negligence, is somewhat modified, from that announced in the cases of *Aurora Branch R. R. Co.* v. *Grimes,* 13 Ill. 585; *Dyer* v. *Talcott,* 16 ib. 300 ; *Galena & C. U. R. R. Co.* v. *Fay,* 16 ib. 558, and *C. B. & Q. R. R. Co.* v. *George,* 19 ib. 510.

8. SAME.—*comparative—doctrine of—how established.* The doctrine of comparative negligence as established by this court is, that there must be fault on the part of the defendant, and no want of ordinary care on the part of the plaintiff; and when both parties are at fault, the plaintiff may in some cases recover, as, where it appears that his negligence is slight and that of the defendant gross.

9. SAME—*where plaintiff's negligence concurred—when he may recover.* And this rule holds, even where the slight negligence of the plaintiff in some degree contributed to the injury. If the defendant has been guilty of a higher degree of negligence, slight negligence on the part of the plaintiff, does not absolve the defendant from the use of all reasonable efforts to avoid the injury.

10. SAME—*railroad crossings in populous cities—greater vigilance required of persons attempting to cross.* Where railways cross public streets on the same level, greater vigilance is demanded by persons attempting to cross them, than

will be required where the crossing is over a country road. What precautions taken, will be considered sufficient.—Quere.

11. Same—care and diligence required on the part of all parties. Persons attempting to cross a railroad track, as well as those engaged in the running of trains, must exercise all proper care and diligence, and use every reasonable means to prevent accidents to life and property, their rights, as well as their obligations to each other, being mutual.

12. Evidence—admissibility of. In an action for negligence against a railroad company, the plaintiff introduced in evidence certain rules of the company, for running its trains, among which was the following: "a red flag by day, or a red light by night, waved upon the track, signifies that the train must come to a full stop," whereupon the defendant offered to prove, that such rule did not apply as to the signals used within the corporate limits of the city, where the injury happened to plaintiff, but that other and different signals were employed, which proofs the court excluded; Held, that such evidence was proper, and should have been admitted, for the purpose of determining the question as to whether the defendant was chargeable with negligence, by reason of the disobedience by its employees of the proper signals.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion of the Court.

Mr. A. W. CHURCH and Messrs. MILLER, VAN ARMAN & LEWIS, for the appellants.

Messrs. WARD & STANFORD, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case brought in the Superior Court of Chicago, by Charles Gretzner, against the Chicago and Alton Railroad Company, for injuries received by plaintiff by a collision of the train of defendants with the wagon of the plaintiff, by which he was thrown out, and seriously injured, and that

the collision was caused by the negligence of the defendants. The declaration contained three counts, the first of which averred negligence generally, on the part of the defendants. The second count charges negligence on the part of the defendants in running their train at a too high rate of speed, and in not having a flagman stationed at the street crossing where the accident occurred; and the third count charges the negligence, in not ringing a bell, in running the train at a too high rate of speed, and in not having a flagman stationed at the crossing.

The cause was tried by a jury on a plea of not guilty, and a verdict rendered for the plaintiff of seven thousand five hundred dollars, on which judgment was entered, the court refusing the defendants' motion for a new trial, and a bill of exceptions taken.

We have examined the testimony in the cause and are satisfied it does not sustain the verdict. The great preponderance of the evidence is in favor of the defendants. It was not attempted by the plaintiff, on the trial, to prove that the bell was not rung, or that the rate of speed of the train was too high, he being content to rest his case, on the alleged absence of the flagman from his post. It was proved on the part of the defendants, that the bell was rung from the time the train left the freight house, continuously, to the moment of the collision, and that the speed of the train was slackened to the rate of about five miles per hour. As to the presence of a flagman at his post, the plaintiff examined five witnesses who testified they saw the collision, though from different points of view, and they testify they saw no flagman on duty before the collision. One of them, Duffig, says he was excited at the time, and paid no attention to the flagman, and don't know whether there was one or not—don't recollect. Bohnet says the flagman generally stands in the middle of the street, and if there, he could not see him where he, witness stood—thought of nothing until the collision occurred, any more than when any one passes.

Donlan states he was standing at southwest corner of Van Buren and Canal streets, about half a block from the collision, talking to two young men there. While talking, one of the young men turned around and said "look." Witness looked and saw just as the car came up and struck the hind part of the wagon; could see down the street: flagman usually stood in the centre of the street; was not there then. On his cross-examination he said, that a good many persons and teams were passing there—that all he knew about flagman was, that he did not see any. The collision was just on the point of happening when he looked.

Helper states he saw the collision—had just stepped out of a saloon on the south side of Van Buren street, near the bridge, and plaintiff passed him on a lively trot about one hundred feet from the rail road; witness was going west on Van Buren street, saw plaintiff, when he came near the collision try to turn back but could not, a pile of dirt being in the way; did not see any flagman there just previous to the collision; would probably see flagman if he was there; the train was moving along pretty briskly.

On his cross-examination he says it was in his mind if plaintiff went on, he would probably be struck by the cars; the cars were backing north, and were in the middle of the street when he first noticed them; only saw them a little moment before the collision; noticed nothing before the collision; heard hallooing just before the collision; was excited and did not notice anything in particular before he noticed the collision.

The other witness for plaintiff, John Fairbanks, testified that he crossed Van Buren street just before the collision and there was no flagman then in the middle of the street; did not see any flagman there; had seen him there before; sometimes they stand in the middle of the street, sometimes on a little side-walk built out from the main side walk in the street; no flagman was there when he crossed over.

The cross-examination of the witness should satisfy any jury that he was a sort of witness whose testimony should be received with great caution, as it was shown he testified differently, at a former trial of the cause. His is the only testimony going to the point in controversy.

On the part of the defendants, it was proved positively, by the engine driver, by the baggage man, by Michael Curtin, the acting flagman on the day of the collision, and by the switchman, that the flagman was at his post making the required signals. They also proved, by Monday, a carpenter, that he was planking Van Buren street between the railroad and the bridge ; saw the plaintiff riding in a butcher's wagon ; was eighty three feet ; when he passed witness was riding at a fast trot ; stooped his head quite carelessly ; the man at the crossing hallooed, and when witness heard it he looked towards the track, and saw Michael Curtin ; thinks he was waving a red flag towards him, and hallooing : "back, back," at the same time ; heard him distinctly ; plaintiff was about eight feet from the track when witness heard the hallooing, but did not slacken his speed ; his horse got on the track with forewheels of the wagon, and then he endeavored to run off. One Quaid states he recollected the accident ; was on side-walk on north side of Van Buren street, five or six feet from the railroad ; had been filing his saw by the side of the flag house ; the first he noticed was Curtin hallooing to a man— waving his flag and hallooing to the man that was hurt ; plaintiff was then fifty or sixty feet east of the track, driving on a pretty fast trot ; did not slacken until he came to the railroad track, then stopped and tried to turn him off ; Curtin was standing in the middle of the street.

These two last named witnesses were employees of other railroads running to Chicago.

When it is considered, that three of the witnesses for plaintiff, Dolan, Bohnet and Helper, were not in a position to have seen the flagman, had he been at his post, and that the

attention of no one of the five was directed to that fact, and that not one of them save Fairbanks, swears he was not at his post; whilst all the witnesses for the defence, six in number, swear positively he was at his post making the usual signals required by the occasion; and their testimony, unimpeached and of a character clear and apparently unexceptionable, we are at a loss to perceive on what grounds such a verdict was rendered. The witnesses for the defence had a far better opportunity of being informed as to this fact than those on the other side, and this court has said, and such is the doctrine of all the books, that a jury, in determining the weight of testimony between two witnesses, the preponderance should be given to the one whose advantages for being correctly informed as to the matters in controversy, were the best. *Brady* v. *Thompson*, 17 Ill. 270.

Although it may be admitted, that the witnesses for the defence were, a majority of them, in the employment of the party for whom they were called, however far that fact should go to instruct the jury to examine closely their testimony, and receive it with caution, it does not justify the jury in discrediting them to the extent of rejecting their testimony entirely. What is a railroad company to depend upon if they cannot call upon their agents for the facts in their knowledge? And what a hardship it would be, practically, upon them to say, though your agents have done their whole duty, as they have sworn, and no witness has contradicted them, yet, being your agents in your employment, and in your pay, they must be discredited; and the weak and unsatisfactory testimony of others, alien to the corporation, shall prevail over it.

This court has said, that a jury cannot willfully, or from mere caprice, disregard the testimony of an unimpeached witness—that while they may judge of the credibility of a witness, they must exercise their judgment whilst doing so, and not their will merely. *Robertson* v *Dodge*, 28 Ill. 161.

It is true, this court said, in the case of the *Chicago, Bur-
lington and Quincy Railroad Company* v. *Triplett,* 38 Ill.
484, and the *same company* v. *Cauffman,* ib. 427, where one
class of witnesses are apparently free from all bias, and upon
another class a very heavy moral responsibility attaches from
the burden of which they have the strongest inducements to
relieve themselves if possible, by their testimony, a jury is
justified in giving more weight to the testimony of the former
class; yet, tested by this rule, however grievous the load of
responsibility of the engine driver and flagman may have
been, there was none resting upon the switchman, or the
baggage man, for neither had anything to do with running
the train, giving or regarding signals, nor had the two indif-
ferent spectators of the collision, Monday and Quaid, any
connection with this road in any capacity. Some weight
must be given to the testimony of the responsible persons,
that is certain, and if any is given to it, then, if fortified by
the testimony of indifferent men, it should have prevailed
over the testimony of the plaintiff, as it greatly preponderates,
after making all proper allowances for their position. *Chase*
v. *Debolt,* 2 Gilman, 371; *Boyle* v. *Leving's* 24 Ill. 223;
*Clements* v. *Bushway,* 25 ib. 200.

This is the substance of the testimony as to negligence on
the part of the appellants. The facts proved against appellee
show great negligence on the part of the plaintiff, and the
proper question to be submitted to the jury, was, in accord-
ance with repeated rulings of this court, and of other courts,
did the negligence of the plaintiff, materially, contribute to
the injury; or rather was it so slight, and that of the defend-
ants so gross in comparison, as to incline the balance in his
favor, and entitle him to the verdict?

We are aware, this is a question for the jury, but the jury
have not the right to decide it capriciously, and against the
great preponderance of the testimony. They must require
evidence on all the questions submitted to them, and can

11—46TH ILL.

only find as it may preponderate. They have no right to ignore facts proved, merely because they choose so to do, nor to turn a deaf ear to a witness who is relating them.

What is the testimony on the point of plaintiff's negligence? All his witnesses concur in saying he drove over the bridge and down the slope leading from it, direct to the railroad, at a fast trot, at the rate of eight miles an hour, taking no observation of what might be before him; and as one witness for the defendants says, with his head down, regardless of the fact that he was approaching a railroad crossing, with which he was familiar, and on which, he knew from experience, trains with locomotives were very frequently passing. He knew, as all men are bound to know, such a crossing is a dangerous place, and he should have approached it as such. This court has said, it is the duty of persons about to cross a railroad, to look about them and see if there is danger, not to go recklessly upon the road, but to take the proper precautions themselves, to avoid accidents at such places. *Chi. and R. I. R. R. Co.* v. *Still,* 19 Ill. 500; *Galena and Chi. U. R. R. Co.* v. *Dills,* 22 ib. 264.

If a party rushes into a danger which, by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may so receive. He must take care, and so must the other party.

The fact of negligence on the part of the defendants, does not seem to be established by proof, for they rang the bell continuously, from the time the train left the freight house to the moment of collision, and slackened its speed to four or five miles an hour. The question then is, shall the negative testimony of witnesses who testify they did not see the flagman at the crossing, added to that of the suspicious witness, Fairbanks, who testified the flagman was not at his post, prevail over the testimony of the five affirmative witnesses of the defendants, who swear that he was at his post making the proper signals. This court has settled that question

repeatedly, and in harmony with the established rule, that positive evidence as to the fact that a bell was rung, or a whistle sounded, or any other fact not improbable in itself, is entitled to more weight than negative evidence in relation to such facts. *Chi. and R. I. R. R.* v. *Still*, supra.

We understand the doctrine to be well settled by this court, in cases of this character, the plaintiff, to recover damages, must show that his own negligence, or misconduct, did not concur in producing the injury. *Aurora Br. R. R. Co.* v. *Grimes*, 13 Ill. 585; *Dyer* v. *Talcott*, 16 ib. 300; *G. and C. U. R. R. Co.* v. *Fay*, ib. 558, and if he alone is in fault, or both parties are equally in fault, the injured party cannot recover. *C. B. and Q. R. R. Co.* v. *George*, 19 ib. 510. This rule was somewhat modified by subsequent cases. *Same company* v. *Dewey*, 26 ib. 255, and *same* v. *Hazard*, ib. 373; *Galena and Chi. U. R. R. Co.* v. *Jacobs*, 20 ib. 478. These cases establish the doctrine of comparative negligence, and hold there must be fault on the part of the defendant, and no want of ordinary care on the part of the plaintiff, and where there are faults on both sides, the plaintiff may, in some cases, recover, as where it appears his negligence is slight, and that of the defendant gross; and this rule holds even when the slight negligence of the plaintiff, in some degree, contributed to the injury. *Coursen* v. *Ely*, 37 ib. 338; *Chi. and Alton R. R. Co.* v. *Hogarth*, 38 ib. 370; *C. B. and Q. R. R. Co.* v. *Triplett*, supra, ib. 482; *Ill. Cent. R. R. Co.* v. *Simmons*, ib. 242; so in the case of the *St. Louis, Alton and Chicago R. R. Co.* v. *Todd*, 36 ib. 409. The doctrine of the Jacobs case was reasserted that negligence was relative, and although the plaintiff has been guilty of negligence, he may hold the defendant liable, if he has been guilty of a higher degree of negligence in producing the injury—that slight negligence on the part of the plaintiff, does not absolve a defendant from the use of care, and of all reasonable efforts to avoid the injury; it does not license him to destroy the plaintiff's property.

Testing this case by the rules here laid down, the negligence on the part of the defendants must be so much greater than that of the plaintiff, as to put them in default. We have seen the extent of that negligence, and aside from the testimony of Fairbanks, none is shown. It would be a violation of every principle of evidence, to give to his testimony, weakened, as it was, by his cross examination, greater effect, than the positive testimony of five unimpeached witnesses testifying against him.

Now as to the negligence of the plaintiff. What was his duty in approaching this crossing, known to be dangerous, with all the ordinary safeguards applied?

The case of *Still*, 19 Ill. 500, supra, holds that a railroad company should give suitable warning of danger at a common road crossing, so as to prevent injury to others, so far as possible, but this duty does not justify a person at such a crossing from omitting any proper act of vigilance on his part to avoid a collision. To the same effect is *Ill. Cent. R. R. Co.*, v. *Buckner*, 28 *ib.* 299.

If this be required at the crossing of a railway with a common country road, is it not reasonable that a greater amount of vigilance should be exercised when the crossing is a great thoroughfare of a populous city, where persons, animals and vehicles were passing with slight intermissions? When railways cross public streets on the same level, there is very great exposure to accidents of this nature, and consequently great vigilance is demanded by those attempting the crossing, and the use of all proper precautions. What these shall be, it is difficult to particularize, but that to slacken speed, keep a good "look out," and approach the crossing as a dangerous place, are some of them. The plaintiff was driving a butcher's wagon with a fast horse, which butchers generally own, and do not fail to put to their "mettle," and in a fast trot he passed over the bridge and on to the crossing without stopping, and as we should infer from the testimony, without

looking for signals or anything else. We think the rule laid down in Still's case and in Buckner's is a salutary rule, and that any person having charge of a team, and about to cross a railroad, in a street of a populous city, and which is a great thoroughfare where trains are constantly passing, is bound to look in both directions before he permits his team to put a foot within the rails, and his omission so to do, ought to be held negligence on his part. The testimony is strong to show, had he done this, or even slackened the speed of his horse, the accident would not have happened. The same general principles apply to this driver, as to the defendants. He was bound to conduct his business and movements with all that regard to the safety of himself and others which prudent men commonly employ in similar occupations.

This rule of law is demanded by a due regard to the safety of life and property, both of the plaintiff, and that of the defendant passing on the railroad. The right to be there was mutual, and both parties should have so conducted, as to have avoided injury. Even if the flagman was at his post, and gave the requisite signal, and it could be shown that something more was necessary to be done by the defendants, to protect passers by, and shield them from injury, we should hold the defendants would be inexcusable if they did not afford it, unless it should appear the want of it did not contribute to the injury. They, as well as all others, are bound to use every reasonable means to prevent injury, all proper care and diligence—and in a crowded thoroughfare, this obligation is most pressing.

We are of opinion, the jury decided manifestly against the weight of evidence, in finding defendants guilty of negligence, and the Court should have set aside the verdict on the motion of the defendants.

In the progress of the trial, the instructions for running trains were offered in evidence by the plaintiff through Mr. McMullen, the Assistant Superintendent of the road, and were

embraced in fifty-eight rules, the forty-seventh of which is as follows : "A red flag by day, or a red light by night, waved upon the track, signifies that the train must come to a full stop." The defendants objected to the introduction of this rule in evidence, but the court overruled the objection and it was read to the jury.

On cross-examination of McMullen, he was asked this question : "What was the duty of an engine driver of a train with reference to the observance of signals, and also in regard to flagmen at the street crossings in the city of Chicago ?" This question was objected to by plaintiff, and disallowed, and defendants excepted.

The defendants then asked this question : "Did these printed rules apply, as to signals, to your road in the city ?"

The objection of plaintiff to this question was also sustained and the defendants excepted. The defendants then offered to prove by this witness that when a flag is waved by a flagman at a street crossing in the city, it is the duty of the engine driver to keep on, unless the flag is waved in a manner peculiarly adapted to notify him to halt, and that manner is—by waving the flag towards him ; and that the printed rules in this particular, did not apply to the city of Chicago. The objection of plaintiff to this evidence was also sustained and the defendants excepted.

The witness then stated, that at the time of the collision, the engine driver was furnished with these rules. Thereupon the defendants put this question : "Were your drivers also informed that these rules did not apply to the city of Chicago?" The plaintiff's objection to this question was also sustained and the defendants excepted.

These rulings of the court, excluding the testimony of Mr. McMullen, as to the duty of the engine drivers in the observance of signals at street crossings in the city of Chicago, and their application to signals in the city, and to all other testimony excluded, of a like character upon this point, were clearly erroneous.

It was testimony very material to the defendants, for there was abundant proof that a red flag was waved and the train did not stop, hence, the inference drawn by plaintiff: "Your driver did not obey the signal you had charged him to obey, therefore, you are chargeable with negligence in this respect."

It was clearly right and proper then to allow the defendants to show, that this rule had no application to the road at street crossings in the city, and that the driver was not bound to stop at such crossings, by the mere exhibition of the red flag. Were this not so, the progress of a train through the city of Chicago, crossing some of its most important and crowded thoroughfares, would practically cease, for if they are required to come to a full stop at such places, and wait for the vast crowds of men and animals and carriages to pass, the tortoise would outstrip them on the same line of travel. It would be an intolerable grievance. It is enough to require signals to be displayed to warn the multitude not to press on, a train being expected. Had this evidence been allowed, as it should have been, then the sixth refused instruction of defendants would have been applicable and should have been given. By ruling out this testimony, and refusing this instruction, the defendants were placed at a great disadvantage, the jury misled by the rejection of the testimony, and the defendants materially prejudiced. Had the testimony been admitted, and the instruction based upon it given by the court, it is hardly probable the jury would have found the verdict they did find.

We avoid discussing the instructions; our views as to what they should be have been sufficiently stated. On another trial the instructions will conform to them, if any are asked.

For the reasons given, the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

LAWRENCE, J. :   I concur in the reversal of this judgment on the ground that the court erred in excluding the evidence offered by the defendant below, in regard to the rules of the company as set forth in the foregoing opinion of the Chief Justice. I express no opinion, however, on the weight of the evidence.

WALKER, J. :   I express no opinion on the facts appearing in this record, but concur in the rules of law announced in the opinion, and concur in the reversal of the judgment.

*Judgment reversed.*