## JULIETTE E. GARLAND

v.

## CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

1. CROSSING RAILROAD TRACK.—It is the duty of persons about to cross a railroad track to look about them and see if there is danger; not to go recklessly upon the road, but to take proper precautions themselves to avoid accidents at such places. It is culpable negligence for any person to cross the track of a railroad without looking in every direction in which the rails run, to make sure that the road is clear.

2. OBSCURING VIEW BY OTHER CARS.—The fact that the view of the track may have been obscured by other cars left standing on the side-track, does not lessen the caution required of a person attempting to cross, but imposes upon him the duty of exercising a higher degree of diligence.

3. RUNNING TRAIN AT HIGH RATE OF SPEED.—The running of a train at a high rate of speed, is not of itself a reckless or wanton disregard of the safety of the public, or a willful attempt to injure the plaintiff, especially when it does not appear there was an ordinance prohibiting it or limiting the rate of speed.

4. PERSON CROSSING NEED NOT STOP.—The court should not lay down as a rule of law that a person about to cross a railroad track must stop as well as look and listen before crossing. The law requires him, however, to exercise a degree of care proportioned to the danger of the case; but whether he is bound to stop is a question of fact to be determined by the circumstances of each case.

5. MANDATORY INSTRUCTIONS.—Instructions abounding in strong, mandatory expressions which tend to interfere with the free, unbiased consideration by the jury of the facts in evidence, are erroneous.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Opinion filed June 14, 1881.

This was an action on the case, brought by Juliette E. Garland against the Chicago and· Northwestern Railway Company, to recover damages for a personal injury to the plaintiff, caused as it is claimed, by the negligence of the defendant. On the trial in the court below, the jury found the defendant not guilty, and the defendant had judgment for costs. The facts as they were developed at the trial, were briefly as follows :

On the 15th day of August, 1879, the plaintiff, while riding with her husband across the defendant's railway track where it

crosses Lee street, in the village of Desplaines, Cook county, was struck by one of the defendant's engines, and received the injury complained of. Desplaines is a village containing from 1,000 to 1,200 inhabitants, and the defendant's railway track runs through the center of the village in a southeasterly and northwesterly direction, crossing Lee street at right angles. The Lee street crossing is three hundred feet westerly from the passenger station, and from a point several hundred feet east of the station to a point a considerable distance west of Lee street; there are two side-tracks running along the southerly side of the main track, the spaces between these several tracks being about nine feet each. The defendant's right-of-way at the point in question is two hundred feet wide; and running along the southerly side of and adjoining the right-of-way is a street fifty feet wide, crossing Lee street; and on the southerly side of this street, and about one hundred and thirty feet east of the corner of Lee street, is the post-office.

At the time of the injury, the middle track west of Lee street was occupied by a freight train headed west, the rear car or caboose standing partly or entirely within the boundaries of the street, but west of the usual line of travel. On the southerly side-track east of Lee street, there were standing five or six freight cars, the westerly car being some ten feet east of the line of the street, and on the middle track about opposite the passenger station was standing an excursion passenger train. About ninety rods easterly from Lee street the main-track crosses the Desplaines river by a bridge, and a point immediately in front of the post office commands a view of the track in an easterly direction, with occasional intervening obstructions to a considerable distance beyond the bridge.

The plaintiff and her husband had resided about one mile from Desplaines for about nine years prior to the injury, and both were familiar with the tracks and crossing. On the day in question, they rode to the village in a covered market-wagon accompanied by a young lady, a niece of theirs, and at about five o'clock in the afternoon they drove up to the post office, where the plaintiff alighted, her husband and the young lady remaining in the wagon. Presently she returned and got into

the wagon, she and her husband occupying the front seat, with the niece sitting behind them, and they then started towards the Lee street crossing on their way home, the husband driving the horse.

The train which caused the injury was the passenger train running from Chicago to Geneva Lake, Wis., and which did not ordinarily stop at Desplaines. The plaintiff testifies that while she was standing on the steps of the post-office, and before getting into the wagon, she looked along the track in an easterly direction to see if a train was coming, and saw none, and that while passing towards the crossing she continued to listen but heard no sound of an approaching train. Her husband also testifies, though in a manner much less definite and satisfactory, that he both looked and listened for trains, but saw and heard none. The niece, who sat so far back in the wagon that she could see out only in front, testifies that she heard a rumbling sound which seemed to her like the cars, but does not remember saying anything about it. After leaving the post-office, the plaintiff's husband drove towards the crossing, and without pausing or stopping to listen, and without looking any farther for an approaching train, crossed the first and second side-track, and drove directly on to the main track, where they were struck by the engine of the passenger train, and all three thrown out and severely injured.

There is some evidence, mostly of a negative character, tending to show that no bell was rung or whistle sounded as the engine approached the crossing in question; but a large number of witnesses, including the engineer and fireman in charge of the engine, and various persons who were in the vicinity and in such position as to be able to hear, testify positively that a bell was rung and whistle sounded. There is some conflict in the evidence as to the rate of speed at which the plaintiff's husband drove from the post-office to the crossing. His testimony is that his horse was walking, while three witnesses, Fanny Grey, the niece who was riding with him in the wagon, Leonard Quail, a brakeman on the train who happened to be looking out of a window of the rear coach just as the horse was crossing the side-track, and John Thompson, a resident

of Desplaines, who at the time was passing near the place of the accident, testify that the horse at the time of the collision was being driven on a trot. Some question is also made as to the speed at which the train was running. The plaintiff insists, chiefly from calculations based upon the time usually occupied by the train in making the trip from Chicago to Geneva Lake, that it must have been running at the rate of forty miles per hour, while the engineer swears that he applied the air-brake and reduced the speed to not exceeding twenty-five miles per hour.

The engineer testifies, and in this he is not contradicted, that he was at his post on the right-hand side of the engine, looking out in front, but that the horse, approaching as he did from the left-hand, did not come within his view until the instant of the collision, and that after he saw the horse it was impossible by any means he had at command, to avoid the collision. The remaining facts are sufficiently stated in the opinion of the court.

Mr. B. C. COOK and Mr. A. M. HERRINGTON, for appellee, upon petition for rehearing; that the negligence of the party in charge of the team was the negligence of those in company with him, cited L. S. & M. S. R'y Co. v. Miller, 25 Mich. 275; Railway Co. v. Hart, 87 Ill. 529.

Nothing can relieve a person from the duty of exercising due care in crossing a railway track: Railway Co. v. Jones, 76 Ill. 311; T. W. & W. R. R. Co. v. McGinnis, 71 Ill. 346; Ill. Cent. R. R. Co. v. Hetherington, 83 Ill. 510; Ill. Cent. R. R. Co. v. Godfrey, 71 Ill. 500; C. &. R. I. R. R. Co. v. Still, 19 Ill. 500; C. & N. W. R'y Co. v. Sweeney, 52 Ill. 325; Peoria Bridge Asso'n v. Loomis, 20 Ill. 236; St. L. A. & T. H. R. R. Co. v. Manly, 58 Ill. 300; Bellefontaine R. R. Co. v. Hunter, 33 Ind. 364.

Where plaintiff is guilty of negligence a recovery cannot be had unless the conduct of the defendant was such as showed a reckless disregard of the safety of the public, or an intent or willingness to cause the injury complained of: C. R. I. & P. R. R. Co. v. Houston, 95 U. S. 697; T. W. & W. Ry. Co. v. Mc-

Ginnis, 71 Ill. 346; Ill. Cent. R. R Co. v. Hetherington, 83 Ill. 510; Ill. Cent. R. R. Co. v. Godfrey, 71 Ill. 500.

If the use of his senses would apprise a person about to cross a railroad track, of danger, he is bound to use them, and no circumstance will excuse him for not doing so: C. & N. W. R'y Co. v. Hatch, 79 Ill. 137; C. B. & Q. R. R .Co. v. Damerell, 81 Ill. 450; Ill. C. R. R. Co. v. Goddard,/72 Ill. 567; C. R. I. & P. R. R. Co. v. Mc Keen, 40 Ill. 218; Gorton v. Erie R'y Co. 45 N. Y. 660; Havens v. Erie. R'y Co. 41 N. Y. 296; Bellefontaine R'y. Co. v. Hunter, 33 Ind. 364; Penn. R. R. Co. v. Beale, 73 Penn. St. R. 509; C. R. I. & P. R. R. Co. v. Houston, 95 U. S. 697; Harlan v. St. L. K. & N. R'y Co. 64 Mo. 482.

Error in instructions will not always reverse: Hardy v. Keeler, 56 Ill. 152; T. P. & W. R. R. Co. v. Ingraham, 58 Ill. 120; Graves v. Shoefelt, 60 Ill. 462; C. B. & Q. R. R. v. Dickson, 63 Ill. 151; Daily v. Daily, 64 Ill. 329; Burling v. Ill. Central R. R. 85 Ill. 20; Gilchrist v. Gilchrist, 76 Ill. 281; Lodge v. Gatz, 76 Ill. 272; St. L. A. & T. H. R. R. Co. v. Funk, 85 Ill. 460.

It was the duty of the driver to stop before attempting to cross: Penn. R. R. Co. v. Beale, 73 Pa. St. 509; N. Penn. R. R. Co. v. Heilman, 13 Wright, 68; C. & N. W. R. R. Co. v. Hatch, 79 Ill. 137; Reeves v. R'y Co. 6 Casey, 464; R. R. Co. v. Damarell, 81 Ill. 450; Railroad Co. v. Jacobs, 63 Ill. 178.

Messrs. Miller & Frost, and Mr. H. L. Lewis, for appellant; upon the doctrine of comparative negligence, cited C. & N. W. Ry. Co. v. Sweeney, 52 Ill. 325; C. B. & Q. R. R. Co. v. Payne, 49 Ill. 499; C. & A. R. R. Go. v. Gretzner, 46 Ill. 74; C. & A. R. R. Co. v. Gregory, 58 Ill. 226; C. B. & Q. R. R. Co. v. Lee, 87 Ill. 450.

Running a train at a high rate of speed through a village, is in itself negligence: T. W. & W. R. R. Co. v. Miller, 76 Ill. 278; C. H. & R. R. R. Co. v. Becker, 84 Ill. 484; C. & A. R. R. Co. v. Engel, 84 Ill. 398; P. P. & J. R. R. Co. v. Siltman, 88 Ill. 532; Wabash R. R. Co. v. Henks, 91 Ill. 413; Continental Ins. Co. v. Stead, 5 Otto, 161.

Omitting to give signals upon the approach to a crosssing, is negligence: St. L. V. & T. H. R. R. Co. v. Dunn, 78 Ill. 197; Dimick v. C. & N. W. R. R. Co. 80 Ill. 338; C. & A. R. R. R. Co. v. Elmore, 67 Ill. 176; Snyder v. Pittsburg R. R. Co. 11 W. Va. 14.

Instructions not based on evidence should not be given. The evidence should be fairly sufficient to raise the question involved in the instruction: Ill. Cent. R. R. Co. v. Benton, 69 Ill. 174; American v. Rimpert, 75 Ill. 228; Bradley v. Parks, 83 Ill. 169; Straus v. Minzesheimer, 78 Ill. 492; Nichols v. Bradsby, 78 Ill. 44; I. B. & W. R. R. Co. v. Birney, 71 Ill. 391; C. B. & Q. R. R. Co. v. George, 19 Ill. 510; Sprague v. Hazenwinkle, 53 Ill. 419; Andreas v. Ketcham, 77 Ill. 377.

Negligence is a question for the jury: Ill. Cent. R. R. Co. v. Benton, 69 Ill. 174; Ill. Cent. R. R. Co. v. Cragin, 71 Ill. 177.

The jury should be left to draw their own conclusions from the evidence; the court is not to tell them what they may infer: Graff v. Simmons, 58 Ill. 440; Groves v. Calwell, 90 Ill. 612; Aurora v. Hillman, 90 Ill. 61; Ashlock v. Linder, 50 Ill. 169.

BAILEY, J. There is no view of the evidence we are able to take which does not charge the plaintiff and her husband with gross negligence. Ordinary experience and judicial decisions without number concur in declaring railway crossings, where trains of cars are frequently passing, to be places of great danger, and the rule has accordingly been laid down and frequently repeated by our Supreme Court, that " it is the duty of persons about to cross a railroad to look about them and see if there is danger; not to go recklessly upon the road, but to take the proper precautions themselves to avoid accidents at such places. If a party rushes into danger which by ordinary care he could have seen and avoided, no rule of law or justice can be invoked to compensate him for any injury he may so receive." C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; C. R. I. & P. R. R. Co. v. Bell, 70 Id. 102; C. & N. W. R. W. Co. v. Ryan, Id. 211; C. & R. I. R. R. Co. v. Still, 19 Id.

499; C. B. & Q. R. R. Co. v. Harwood, 80 Id. 88; L. S. &
M. S. R. R. Co. v. Hart, 87 Id. 529; I. C. R. R. Co. v.
Hetherington, 83 Id. 510; St. L. A. & T. H. R. R. Co. v.
Manly, 58 Id. 300; C. & A. R. R. Co. v. Jacobs, 63 Id. 178;
C. & N. W. R. W. Co. v. Hatch, 79 Id. 137; C. & N. W. R.
W. Co. v. Dimick, 96 Id. 42. Thus it is held to be culpable
negligence for any person to cross the track of a railroad with-
out looking in every direction in which the rails run, to make
sure that the road is clear. I. C. R. R. Co. v. Goddard, 72 Ill.
567; I. C. R. R. Co. v. Hetherington, *supra.*

The plaintiff and her husband were both familiar with the
crossing in question. They knew its situation and were well
aware of the dangers by which it was surrounded. They were
riding in a covered market-wagon, with the side coverings all
down, so that, with the exception of certain small apertures
or windows through the curtains, their view on either side was
obstructed; and from the place where they sat, they could not,
without leaning considerably forward, see objects approaching
them from the right hand or left. Their attention was called
to the fact that a train might be approaching, as both claim
to have looked for cars before starting, and to have been lis-
tening for the sound of an approaching train while passing
from the post-office to the crossing. The clear preponderance
of the evidence shows that they drove their horse on a trot
and there is no pretense that after starting, either the plaintiff
or her husband looked, or attempted to look for a train, or that
they either stopped or slackened their speed for the purpose
of either looking or listening, but drove directly in front of the
engine as it came to the crossing.

It is argued that the defendant was guilty of negligence in
placing its cars on the intervening side-tracks, so as to obscure
the view of approaching trains, and that the plaintiff and her
husband were thereby in a corresponding degree excused from
the duty of looking for trains before attempting to cross the
main-track. In our opinion neither of these propositions is
tenable. The defendant had an undoubted legal right to place
its cars on its side-tracks, and to allow them to stand there for
such time as the exigencies of its business required. That is

one of the main purposes for which such tracks are constructed, and their proper and legitimate use cannot of itself render the railway company obnoxious to the charge of negligence. Nor did the fact that cars were standing on these tracks, justify the plaintiff or her husband in relaxing, to any degree, the care and vigilance which the law required them to exercise in order to foresee and avoid danger. The intervening cars in no way, diminished the apparent danger. The probability that a train might be approaching was not lessened in the least. True, the difficulties in the way of foreseeing its approach were in some degree increased, but that fact imposed upon persons approaching the crossing the duty of exercising a higher degree of vigilance in ascertaining whether it was prudent to cross the track.

But the evidence shows that notwithstanding all these obstructions, the train was in plain view at the time the plaintiff's husband drove on to the main track; so that if he had but just glanced in the direction from which it was approaching, he would have seen it in time to avoid the collision. There can be no question that when he reached the southerly side-track a point at least twenty-five feet from the main-track, his view along the main-track in an easterly direction was entirely open and unobstructed to a point considerably east of the passenger station, a distance of four or five hundred feet. This appears not only from the evidence as to the topography of the grounds and the location of surrounding objects, but Leonard Quail, a brakeman on the train, testifies that, at and just prior to the time of the collision, he was sitting in the rear coach of the train, with his head out of the window and looking forward, the train being composed of the engine, one baggage car, and four passenger coaches, and that the horse and wagon came within his view when crossing the side-track, about twenty feet, as he thinks, from the main-track, which obviously must have been when they were crossing the southerly side-track. If the horse and wagon, when twenty feet or more from the main-track, were visible to a person at the rear of this train, nearly or quite three hundred feet in length, it is manifest that the engine was in plain view of the plaintiff and her husband at the

same time, if they had only looked, and it seems highly probable that it came within the range of their vision, so that they might have seen it somewhat earlier.

If up to that time the view of the track was wholly or partially obscured, so as to leave them at all in doubt, as to their safety in attempting to cross, it was only the dictate of the most ordinary prudence to look along the track the instant the intervening objects were passed, and become assured of their safety before proceeding.   Had they done so, they would have seen the train, and the distance was such as to have afforded ample opportunity to stop and avoid injury.   But instead of this, the horse was driven on a trot across the side-tracks and on to the main-track, the plaintiff and her husband sitting so far back in their covered wagon that the witness, Quail, could see neither of them, and of course so far back that their own view of the approaching train was entirely obscured, and no attempt whatever was made by them or either of them, by looking, stopping, listening, or otherwise, to ascertain whether it was safe to proceed, an approaching train being in full view, and within a few yards of them.   Such neglect on their part of all those precautions which reasonable and ordinary care and prudence would have suggested, was gross negligence, and must bar a recovery, unless the evidence establishes willful or wanton negligence on the part of the defendant.

The negligence charged against the defendant was, 1, leaving its cars standing on its side-tracks, so as to obscure the view of approaching trains; 2, failing to sound a whistle or ring a bell on the engine; and, 3, running its train at too high a rate of speed through the village of Desplaines.   The first of these charges has already been noticed.   As to the second, we need only say that the clear and manifest preponderance of the evidence shows that a bell was rung and whistle sounded for the requisite distance before reaching the crossing in question. As to the third charge, we see nothing in the evidence warranting the conclusion that the rate of speed was such as to show wanton or willful negligence.   The most satisfactory estimate of the rate of speed, and the one which the jury doubtless adopted, was that given by the engineer, viz, twenty-

five miles per hour. It does not appear that Desplaines was an incorporated village, or that there was any municipal ordinance in force, regulating the speed at which trains should be run. This train had been run through this village at this rate of speed, daily, for several months at least. The exigencies of the defendant's business, it will be presumed, required that it should be so run. The evidence shows that on the occasion in question the employes in charge of the engine were duly attentive to their duties, and seeking to run the train with a proper regard for the safety of the public. The engineer on approaching the village applied the air-brake, so as to reduce the speed while passing through the village, considerably below that at which the train was run in the country. Now, while it may be that running at twenty-five miles an hour through this village was negligent, we cannot think that, under the circumstances, it argued either a reckless or wanton disregard of the safety of the public, or a willful attempt to injure the plaintiff.

We are unable to see, then, how the jury under the evidence could have arrived at any different verdict. If they had found the defendant guilty of wanton or willful negligence, their finding would, in our opinion, have been in that respect entirely unsupported by the evidence. If they had failed to find the plaintiff and her husband guilty of gross negligence, their verdict would have been contrary to the clear preponderance of the evidence, and it would doubtless have been the duty of the court below to set it aside for that reason. As their verdict was the only one warranted by the evidence, it is clear that the plaintiff was not prejudiced by any errors in the instructions.

Some of the instructions, we think, are erroneous. Thus, the second instruction is incorrect in its statement or definition of what would constitute wanton or willful negligence on the part of the defendant; but as there is no evidence tending to charge the defendant with negligence of that character, this error could not have injured the plaintiff. The same instruction lays down the proposition that no neglect of duty on the part of the defendant could relieve or excuse the plaintiff on

approaching the crossing from the full and free use of her senses of sight and hearing, if they would have been availing, in order to avoid the accident in question.     As a general proposition of law this is much too broad.     The defendant might have been guilty of negligence of such a character as would have lulled the plaintiff into a sense of security, and justified her in relaxing in some degree the vigilance which she would otherwise have been bound to exercise.     But in this case, no negligence of that character is shown, and as applied to the peculiar circumstances of this case, the instruction is in this respect substantially correct.

The third instruction is objectionable, as being to some extent an argument upon a mere question of fact.     This would have been a serious error if the evidence as to the facts discussed had been conflicting.     But as there is no conflict, the facts involved being substantially undisputed, the jury could not have been misled or embarrassed thereby.

The eleventh and thirteenth instructions lay down, as a rule of law, that it was the duty of the plaintiff's husband to *stop* as well as look and listen before attempting to cross the railroad.     Although the courts of some of the States have adopted this rule, it has never been recognized here, and we are disinclined to yield it our sanction.     It is a rule of law of general application, that all persons are bound to exercise reasonable and ordinary care and prudence to foresee danger and avoid injury.     The degree of care which this rule imposes is, of course, proportioned to the degree of apparent danger, and where the situation is one of great danger, as is usually the case with the crossing of a railroad over a public highway, ordinary care and prudence requires the party to be on the alert, so as to make a prudent use of his senses of sight and hearing, as well as of all such other expedients as the circumstances of the case may suggest, to secure his own safety. What these expedients may be in any given case, must always be a question of fact to be determined by the circumstances. Whether in the present case it was the duty of the plaintiff's husband before going on to the track, to bring his horse to a halt and thus look and listen, was not a question of law to be

determined by the court, but a question of fact for the jury·

But viewing it as a mere question of fact, we think the evidence was such as to warrant and even necessitate the conclusion that he should have stopped.  We think no prudent man, under the circumstances, would have failed so to do.  These instructions, then, although they in effect decided for the jury a mere question of fact, and so were clearly erroneous, decided it in a way so completely warranted by all the evidence in the case, that no material injury to the plaintiff can have resulted therefrom.

There is another respect in which several of the instructions are liable to serious criticism.  Not only are they argumentative in some places, but what is a more serious fault, they abound in strong, mandatory and coercive expressions, which could only have tended to interfere with the free and unbiased consideration by the jury of the facts appearing in evidence. Thus in the fourth instruction, the jury are told that if they find certain facts from the evidence, " The jury have no discretion in the matter one way or the other, they must find for the defendant. "  The same mandate is repeated in the same language in the thirteenth instruction.  In several of the instructions the jury are told that, if certain facts are proved, "The jury must find the defendant not guilty. "  In the second instruction it is held that certain facts if shown by the evidence, " Conclusively prove negligence " on the part of the plaintiff. Such language in instructions is always objectionable and should be avoided.  The law should be given to the jury in such terms as will leave them in the discharge of their appropriate functions, free from all interference or coercion, and enable them to decide all questions of fact upon their own independent and unbiased judgment, without suggestion, or dictation by the court.

We are of the opinion, however, that, notwithstanding the errors in the instructions, the verdict of the jury executes justice, and that the judgment should be affirmed.  It is a familiar rule, supported by numerous decisions of the Supreme Court, that a judgment will not be reversed for errors in the instructions, if it is manifest from the whole record that the

jury could not have been misled, and that justice has been done. Had the jury in this case been properly instructed in all respects, we do not think they could have reached any dif ferent conclusion. It would be idle then for us to award a new trial, which, judging from the present record, could result in no benefit to the plaintiff.

Judgment affirmed.