## GEORGE L. DUNLAP

v.

## PERRY H. SMITH ET AL.

*Set-off—Undisputed Evidence—Deal on Board of Trade—Joint Account.*

1. In a civil action an allegation which the evidence tends to prove, must be taken as made out where there is no evidence to the contrary.

2. In an action on a promissory note this court, upon a review of the evidence, finds that the defendant is entitled to an off-set growing out of a deal in wheat on the board of trade, said deal having been on the joint account of the maker and payee of the note.

· [Opinion filed January 25, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. E. B. McCAGG and JOHN N. JEWETT, for appellant.

Mr. S. P. McCONNELL, for appellees.

MORAN, P. J. An action was brought by appellees against appellant upon a promissory note. The only material contest was as to the off-set of some $6,000 which appellant sought to have deducted from the claim against him. The off-set grew out of a certain deal in wheat on the board of trade in which there was a loss of about $12,000, all of which loss was paid by appellant.

Appellant's contention is, that the deal was on joint account for Perry A. Smith, deceased, and himself, and that Smith's estate is liable to him for one-half of the loss on said wheat transaction.

The evidence introduced by appellant to establish his off-set was substantially as follows: Jones, of the firm of Jones & McDonald, testified that he knew Perry H. Smith, in his lifetime, and George L. Dunlap. That his firm had dealings with

Dunlap v. Smith.

Smith and Dunlap, as operators in grain and otherwise, commencing in the latter part of 1879.

The first transaction was in short ribs, and was originally Mr. Smith's. While it was pending, had a conversation with Smith and Dunlap together, in which said rib-deal was made a matter of discussion. Such conversation occurred on LaSalle street near the office of Jones & McDonald.

At that interview received an additional order from Smith to buy 100,000 ribs at 10 cents decline, and to continue doing so every 10-cent decline, until I bought a million. Mr. Dunlap asked the price of short ribs at that time. I informed him, and he said: "Suppose you buy 100,000 for me?" Mr. Smith says: "Well, you buy a couple of 100,000; I have got 200,000, and we will pool them and go joint on the transaction." That was done and the deal closed up. I was instructed during the same conversation about the rib-deal to take orders from either of them for joint account. They were both present at the time that arrangement was made.

From that time until our firm was closed, we had no separate dealings from either of them on our books. Their dealings, and the dealings of each of them, were entered upon our books from that time on under the name of S. & D., meaning Smith and Dunlap. Had several transactions in the spring, or early in the year 1880, for Smith & Dunlap in wheat, which were closed and settled for.

There was a transaction in 50,000 bushels of wheat that was not closed and settled up; can't remember the exact date. Received the order from Dunlap at his house, on an evening shortly previous to my departure for Europe, to buy 50,000 bushels of wheat; I think April option.

The order was given for account of S. & D., the only account we had on the books at that time. The order was executed and I had nothing more personally to do with the matter, but my recollection is, it was changed once or twice into options for other months and the result of the deal was a loss of some $12,000.

There was a suit to recover the loss brought by the receiver of our firm. I did not see Mr. Smith that I remember after

this order was given, and did not talk with him about it till after the transaction was closed; think he was out of town when the wheat was sold. The conversation I have mentioned on LaSalle street, had with Dunlap & Smith, lasted three or four minutes, merely an accidental conversation.

C. B. McDonald, of the firm of Jones & McDonald, testified that he was present at the conversation between Jones and Smith & Dunlap, related by Jones, and heard the instructions given to Jones, that all transactions should be for their, Smith & Dunlap's, joint account; says his firm after said conversation had transactions for said parties extending several months, and that orders given by each of them were taken for account of Smith & Dunlap.

M. C. Lightner testified: Knew Perry H. Smith and George L. Dunlap, and also Jones & McDonald. My firm was Smith & Lightner. Our firm had dealings with Jones & McDonald, and at the time of their failure that firm was indebted to us. Had an interview about that time with Perry H. Smith, in relation to our claim against Jones & McDonald; some time in January, 1881. Mr. Smith told me he had made a purchase of my partner of this claim against Jones & McDonald, as an offset to the claim Jones & McDonald had against Smith & Dunlap. He said that they had a claim against Smith & Dunlap, and he wanted this for a protection or part protection.

To rebut this testimony, appellees called one witness, Ernest Smith, the partner of Lightner, who testified subject to objections, that Perry H. Smith made the arrangement about his firm's claim against Jones & McDonald, with him, and that said Perry H. Smith said, "Jones & McDonald have made a claim against me jointly with Dunlap; they have no claim whatever, and I will buy that of you; they are only paying twelve and one-half cents on the dollar, and it will protect Dunlap anyhow."

This testimony does not purport to relate to the conversation testified to by Lightner, and it was manifestly hearsay, and not competent testimony in behalf of appellees. As it was admitted subject to objections, it is altogether likely that

Dunlap v. Smith.

it was not considered by the court, and at all events it should not be considered and must, in weighing the testimony, be regarded as not in the case.

There remains to be considered only the evidence introduced by appellant to support his claim to set-off. This evidence, in our opinion, fairly tends to show that Dunlap, at the time he gave the order to Jones to purchase the 50,000 bushels of wheat, had the right to give the order for the joint account of Smith & Dunlap, and that the order was given and the purchase made for said joint account.

The instruction given to the firm of Jones & McDonald, and sworn to by the members of said firm, was an instruction which would authorize future dealings by said firm upon orders given by either Smith or Dunlap upon the joint account of said S. & D., and it was a continuing authority from Smith and from Dunlap, each to the other, to give orders to said firm of Jones & McDonald, for the joint account of Smith & Dunlap.

The contention of counsel for appellee, that the joint venture had reference to, and were authorized only in the rib-deal, which was pending at the time the instruction was given, is answered by the evidence that transactions were carried on for several months afterward and that some of the deals prior to the disputed one, were wheat deals; that Smith & Dunlap each gave orders and that those orders were taken for their joint account. There is nothing that we have been able to discover which leads us to conclude that this evidence introduced should be treated as of no weight. The suggestion that it is improbable that men would, with so little discussion or formality, authorize each other to make for both, transactions of such magnitude, loses much force when it is admitted that they actually did authorize the colossal transactions spoken of in the rib-deal.

Courts can hardly establish a rule which will authorize the rejection of unimpeached evidence, because its direct tendency is to prove that men engaged in speculation on the board of trade contracted hastily and in a few words to engage in what might prove large and reckless ventures. It takes but

slight-evidence to prove a contract to do or not to do a given thing within the power of the contracting parties where there is no conflicting or contrary evidence. Here there is no conflict as to the facts in evidence. There is no controversy as between witnesses and no occasion to compare their intelligence or their opportunities to know whereof they speak, or to defer to the superior advantages of the trial judge in determining which of two conflicting witnesses is most credible.

The question simply is, do the facts established by the evidence, and which the court is bound to take as true, support the allegations of appellant? We think they do.

An allegation which the evidence tends to prove, must in a civil case be taken as made out where there is no evidence to the contrary. The ultimate fact to be proved was that Dunlap, at the time he gave the order to purchase the 50,000 bushels of wheat, had authority to give such order for the joint account. That he had such authority is the natural and fair inference from the evidentiary facts proved. They make a *prima facie* case, and until their probative force is overcome by some evidence which justifies a contrary belief, we must hold that appellant is entitled to be allowed the set-off claimed against the appellee.

The judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*