### Albert Schwill & Company, Plaintiff in Error, v. George M. Moulton, Defendant in Error.

### Gen. No. 16,229.

1.   VERDICTS—*effect of inconsistency with evidence.*   If the verdict is inconsistent with any legitimate theory of the evidence and cannot be accounted for except as the result of prejudice or bias it will be set aside on review.

2.   COSTS—*when attorney's fees may be included in judgment.*

If attorney's fees are provided to be taxed as costs in an action on a contract, if recovery be obtained the amount of such attorney's fees may be included in the judgment rendered.

Error to the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON. Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Reversed and remanded. Opinion filed March 14, 1912.

STEIN, MAYER & STEIN, for plaintiff in error.

RICHARD S. FOLSOM, for defendant in error.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

This is an action commenced in the Municipal Court of Chicago by Albert Schwill & Company, a corporation, hereinafter referred to as plaintiff, against George M. Moulton and Arthur G. Moulton, co-partners, doing business as George M. Moulton & Co., hereinafter referred to as defendants, to recover moneys expended by it for labor and materials upon a malt house plant, which defendants by written contract had agreed to erect for plaintiff, and which moneys were used to repair certain alleged defects in the construction of said plant. George M. Moulton was alone served with summons, and he demanded a jury trial, which was had on October 15, 1909, the jury finding the issues for plaintiff and assessing plaintiff's damages at $300. Motions for a new trial were made by both plaintiff and defendant in error, but subsequently the latter withdrew his motion. The court overruled plaintiff's motion for a new trial, and entered judgment on the verdict, to reverse which plaintiff sued out this writ of error.

The facts are substantially as follows: Plaintiff, engaged in the business of brewing malt, in January, 1903, entered into a written contract with defendants, then in the contracting business, whereby defendants agreed to erect for plaintiff a malt house elevator and

storage plant of the most modern design, having a net storage bin capacity of 1,000,000 bushels of barley, for the sum of $232,000. The defendants warranted that the manner of construction and the materials used, together with the machinery and equipment, should be in every detail of sufficient strength, quality and kind for the proper operation of a grain elevator of the size mentioned, and in every regard ready and fit for the purposes for which it was intended, that all work and materials should be of the highest grade and of the best and most modern style of workmanship, and that this warranty should extend to latent defects and should continue after the entire acceptance of the completed work and materials by the plaintiff. The defendants also guaranteed the complete and faithful performance of all the terms and provisions of the contract, and also sufficient strength and stability of all the construction features of said elevator plant, and that said elevator plant should show no signs of any structural weakness for two years from date of acceptance. The contract provided that the elevator plant, and all machinery and equipment thereof, should be erected and completely installed ready for operation on or before September 1, 1903, and that, for every day thereafter during which the same should remain uncompleted, hindering the operation thereof, unless the delay was unavoidably caused by labor strikes, the defendants would pay plaintiff $100 per day, as liquidated damages. The contract further provided for the giving by defendants of a surety bond of $100,000, conditioned upon and guaranteeing the faithful performance of the contract and all of its obligations by the defendants, which bond was duly signed. The plant was not completed on said date, and on April 21, 1904, a supplemental contract was signed by both parties, wherein it was stated that it was their desire to fix a date at which the said elevator should be accepted, and that a sum of money be re-

tained by plaintiff and the balance of the contract price be paid over to defendants and certain of their creditors, and April 1, 1904, was therein fixed as the date upon which said elevator should be held to have been completed and tendered to plaintiff. 'On December 19, 1904, plaintiff made a final payment to defendants on said contract, and took a receipt from them, in which defendants acknowledged that said payment was in full settlement of all moneys due them, in any way arising out of said contract, or for work done by them, or any subcontractor, and in which defendants further stated that "this payment and settlement shall not operate to release us from our obligations: 1st, to make water tight any leaks in said elevator within six weeks after notice * * *; 2nd, to remedy any defect in the original construction, the repair of which is covered in an existing contract bond."

It appears from the evidence that shortly after plaintiff took possession of the elevator plant it began to show signs of structural weakness. On June 29, 1904, plaintiff notified defendants of certain defects in the ladders in the bins and in certain shafting, but these defects were not fully remedied by defendants. Further complaint as to mortar joints, roofing and shafting was subsequently, and from time to time, made in writing by plaintiff to defendants, and finally, after considerable correspondence had passed between the parties, and certain unsuccessful efforts had been made by defendants to remedy the matters complained of, defendants wrote to plaintiff, on February 10, 1905, in part as follows: "We regret to announce that the losses incurred in construction of your elevator have forced us to compromise with our creditors and retire from business. We, therefore, have neither men nor money at our disposal with which to comply with your request." Thereupon, plaintiff employed an outside party to install a new shaft at a cost of $290, another party to repair the roofing at an ex-

pense of $180, and a third party to repair the ladders, at an expense for labor and materials of $295.29,— making a total outlay of $765.29. This suit was brought to recover the moneys expended for these repairs. On the trial, the defendant in error offered no testimony tending to contradict the evidence of plaintiff, showing the actual expenditure of said sum of money, nor any testimony tending to show that the prices paid for the labor and materials in making said repairs were not the usual and market prices therefor, nor any testimony that said repairs were not necessary. The theory of the defense seemingly was that the signing of said supplemental contract of April 21, 1904, operated as a full settlement between the parties, and as a final discharge of the defendants from their guaranties and warranties under the contract. To this effect was the testimony of the witness, George M. Moulton, as were the statements made by counsel for defendant in error, while said witness was on the stand. But this theory, in our opinion, is not substantiated by the record, and is directly negatived by the statement of defendants contained in the said receipt given on December 19, 1904. Furthermore, it is evident that the jury were not impressed with this defense, nor with the testimony of said witness, for had they been their verdict would have been for the defendant in error. And we think that it is manifest from a reading of the record that the repairs made were necessary repairs, and that the necessity therefor was the result of faulty construction and structural weakness at the time of installation.

Counsel for plaintiff urges a reversal of the judgment on the ground that the verdict of the jury, for the sum of $300 in favor of plaintiff, is inconsistent with any legitimate theory of the evidence, and cannot be accounted for except as the result of compromise or bias. We are of the opinion that for this reason the judgment of the court should be reversed

and the cause remanded. Conrad Seipp Brewing Co. v. Peck, 85 Ill. App. 637; Dewes Brewing Co. v. Kerkin, 107 Ill. App. 620-621; Manhattan Brewing Co. v. Riordan, 157 Ill. App. 234; Dunlap v. Smith, 25 Ill. App. 288-291; Chicago & Alton R. R. Co. v. Gretzner, 46 Ill. 74-81; Larson v. Glos, 235 Ill. 584-587.

Shortly after the entry of said judgment plaintiff's counsel made a motion to re-tax the costs, so as to include his attorney's fee for services in the prosecution of said suit, and upon the ground that it was provided in said contract that "in case of the violation of or non-compliance with any of the terms or provisions of this agreement" by either party, such party agrees "to pay and discharge all costs, expenses and reasonable attorneys' fees that may be incurred by the other party on account of such violation or non-compliance, or in enforcing the obligations or covenants hereof, and such expenses and fees may be included in the judgment or decree, *or taxed as costs,* in any suit on this contract." Upon a hearing by the court, at which it was shown by uncontradicted testimony that the sum of $150 was a reasonable fee for such services, objection was made by counsel for defendant in error to the allowance of such sum, *as costs,* and for the reason, as he contended, that in this state, notwithstanding the agreement of the parties, nothing can be allowed as costs, either by the clerk or the court, but those items which are directed by statute to be allowed. The court denied the motion to re-tax and such action is assigned as error.

Inasmuch as we have determined that the judgment of the trial court should be reversed, and the cause remanded for a new trial, it is unnecessary for us to pass upon this question. We may, however, say that in our opinion, under the provisions of the contract in question, in a suit for damages for violation of any of the obligations of said contract in which the com-

plaining party would be entitled to a judgment, an attorney's fee, properly proven and reasonable, could be included in the judgment. Clawson v. Munson, 55 Ill. 394, 397; Barton v. Farmers' etc. Bank, 122 Ill. 352; Campbell v. Goddard, 117 Ill. 251; Weigley v. Matson, 125 Ill. 64, 67; Henke v. Gunzenhauser, 195 Ill. 130, 135.

*Reversed and remanded.*