## William Williams, Appellee, v. Pennsylvania Railroad Company, Appellant.

### Gen. No. 7,737.

1. RAILROADS—*duty as between trainmen and users of highway to stop at highway crossing.* When a railroad train and a person traveling on the highway are each approaching a crossing at the same time, it is not the duty of those operating the train to stop it but, in keeping with the custom of the country, it is the duty of the traveler on the highway to stop and not attempt to pass in front of the passing train.

2. RAILROADS—*maintenance of telegraph poles along right of way as negligence.* For a railroad company to have telegraph poles along its track does not constitute negligence.

3. RAILROADS—*permitting freight cars to stand on sidetrack as negligence.* It is not negligence to permit freight cars to stand on the sidetrack of a railroad.

4. INSTRUCTIONS—*necessity for instructions in close case to be free of doubt and announce legal principles.* In an action for negligence where the evidence as to negligence and contributory negligence is very conflicting and would sustain a verdict for defendant as well as for plaintiff, the instructions should have been plain and free from all doubt and have announced legal principles so there could be no question in the minds of the jury as to the law.

5. RAILROADS—*when instruction as to contributory negligence in*

*crossing case erroneous.* In an action for injuries resulting from a collision between an automobile and a train at a railroad crossing, an instruction to find the driver of the automobile guilty of contributory negligence the jury must believe from the evidence that he failed to exercise that care merely which the law requires, was erroneous as placing the burden of proof as to contributory negligence upon defendant.

6. RAILROADS—*duty of care of highway users at railroad crossings.* It is the duty of persons about to cross a railroad track to look about them and see if there is danger, not to go recklessly upon the track but to take proper precautions themselves to avoid accidents at such places.

7. HARMLESS ERROR—*when error in instruction not cured by other instructions.* The fact that correct instructions were given in a negligence case on behalf of defendant as to the burden of proof to show that plaintiff was in the exercise of ordinary care, did not correct an error in so instructing for plaintiff as to place the burden of proving contributory negligence upon defendant.

8. RAILROADS—*when speed ordinance properly admitted in evidence in grade crossing accident case.* In an action for injuries resulting from a collision between an automobile and a railroad train, an ordinance regulating the speed of trains in the city, which had been duly published, was properly admitted in evidence over defendant's objection that it had been repealed.

9. MUNICIPAL CORPORATIONS—*when repealing ordinance becomes effective under statute.* A repealing ordinance comes under the heading "all other ordinances" under paragraph 67, ch. 24, Cahill's Ill. St. 1921, providing that such ordinances shall take effect from and after their passage unless otherwise provided.

10. MUNICIOAL CORPORATIONS—*when repealing ordinance becomes effective to be admissible in evidence.* The repealing clause of an ordinance regulating the speed of trains in cities took effect from and after its passage and had the effect of repealing a prior ordinance on the same subject and should have been admitted in evidence in a negligence action involving the speed of a train though the ordinance had not been published, as was required, to give effect to its provisions regulating the speed of trains.

Appeal by defendant from the Circuit Court of Edgar county; the Hon. WALTER BREWER, Judge, presiding. Heard in this court at the April term, 1924. Reversed and remanded. Opinion filed October 22, 1924.

DYAS & REDMAN and O'HAIR & McCLAIN, for appellant.

GEORGE W. BRISTOW and CLARK & HUTTON, for appellee.

MR. PRESIDING JUSTICE SHURTLEFF delivered the opinion of the court.

Appellee recovered a judgment against the appellant in the circuit court of Edgar county for injuries received by himself and to his automobile, in a collision with a passenger train at the intersection of Marshall street and the crossing of appellant's railroad, in the southeastern part of the City of Paris, in Edgar county.

At about three-thirty o'clock in the afternoon of September 11, 1922, appellee, with his son and two other men accompanying them, were driving south on Marshall street or "Marshall road," through Paris, in a five-passenger touring car. Appellee's son was driving the car, sitting on the left side of the front seat and appellee upon the right side of the driver, and the two passengers occupied the rear seat.

Marshall street is a paved road, having a pavement about thirty feet in width in the center of the street north of appellant's right of way, and the paving narrows to thirteen feet in width south of the right of way and is on the east side of the street.

The right of way of appellant's railroad is fifty feet in width east of Marshall street, and runs southeast and northwest at an angle of about forty-five degrees. There was a spur or siding on the north side of the right of way east of Marshall street, the stub ending at about the east line of Marshall street at which point two box cars were standing at the time of the accident. Between these cars and the north rail of the main track there was a clear space looking southeasterly about seventeen feet in width, and a clear vision from the road or street southeasterly along appellant's right of way with nothing to obstruct the view except some telephone poles set four or five feet from the line

of the box cars and about one-hundred fifty feet apart, on the line of said right of way. The side track was parallel with the main track and connected with the main track about one-fourth mile east of the crossing. Measuring north and south along the east line of Marshall street it was twenty-five feet from the center of the stub or spur track north to the first building, which was a small concrete building about twelve feet high. The box cars standing on the side track were about nine feet wide and eleven feet in height and extended from a point three or four feet east of the east line of Marshall street, a distance of seventy-five or eighty feet parallel with the main track. North of these cars and between them and the concrete building there was a clear opening about twenty-five feet in width, with nothing to obstruct the vision for one-hundred feet or more, at which point the southwest corner of the Ellwood Tractor Company projected, the same being fifteen or twenty feet north of the railroad right of way. This building was about twenty feet high.

The testimony showed that a truck stood alongside one of the box cars on its northeast side. The view to the southeast, along appellant's right of way, was otherwise unobstructed and there were no obstructions on the south side of appellant's right of way or to the northwest, in which direction the depot lay, at a distance of four hundred to five hundred feet. The center line of Marshall street is the east corporation line of the City of Paris.

Appellee resided at Murphysboro in this State, and on Sunday, September 10, 1922, with his son, had driven to Danville on a business errand, the two passengers accompanying him as a matter of pleasure and on the following day they were returning to their homes over the same route they had traveled the day before.

Appellee's automobile was struck at this crossing

by appellant's train, consisting of an engine, tender, baggage and two passenger coaches, running from Terre Haute, Indiana to Peoria and traveling about twenty miles per hour. Appellee's automobile had been traveling, according to appellee's testimony, at a rate of ten to twelve miles per hour, but upon approaching the railroad had slowed down to about six to eight miles per hour.

Appellee testified that he looked to the east and to the west and saw nothing of any train approaching; that he heard no bell ringing nor the sound of any whistle blown until the front wheels of the automobile were practically upon the north rail of the main track, when he heard the warning whistles blown and the train was right upon them. The engine struck about the middle of the automobile, picked it up and carried the machine a distance of about two-hundred feet before the train could be stopped. Appellee was injured and the machine was wrecked.

There are four counts in the declaration charging general negligence: that no bell was rung; violation of a city ordinance as to rate of speed; and negligence in permitting the freight cars to stand on the stub switch, respectively. There was a verdict and judgment for $2,658.33 and appellant has brought the record to this court by appeal.

There is the usual controversy in the testimony as to whether appellant's servants caused the bell to be rung and whistle blown on appellant's engine, as provided by law, appellee and some of the witnesses testifying that they heard neither bell nor whistle; while the testimony is equally cogent on the part of the trainmen that the proper "station" and "crossing" whistles were blown, and that the "danger" signals were given when it became apparent that appellee's car was not going to stop at the crossing. There was further testimony that the engine bell was ringing, having been started automatically at the proper dis-

tance east of the station, and several witnesses testified that it continued to ring for ten minutes after the train stopped and became so gruesome that the engineer sent the fireman to the engine to shut it off.

The preponderance of the evidence was that appellant was not negligent, as charged in the second count of the declaration. There was much testimony given as to the rate of speed at which appellant's train was running, appellee's witnesses testifying that the train was running from twenty-five to thirty-five miles per hour, while appellant's witnesses testified that the speed of the train did not exceed fifteen to twenty miles per hour. This will be considered further in connection with the ordinance of the city as to speed, admitted in evidence, and a later repealing ordinance, which the court refused to admit.

Much space is devoted in the briefs and argument to the question of contributory negligence on the part of appellee. It was shown that one riding or standing in the middle of Marshall street, after passing the point where the freight cars stood, going south for a distance of seventeen feet before reaching the north rail of the main track, could look southeast and have a clear vision of appellant's main track for a distance of one-hundred and fifty to two-hundred feet. It was objected that the telephone poles obstructed this vision, but the first pole was five feet south of the freight car and the second pole was substantially one-hundred and fifty feet away. This would cause little obstruction to a view at least one-hundred and fifty feet from Marshall street. Inasmuch as traveling a distance of thirty feet, after passing the freight cars, would have carried appellee's automobile over the main track, appellant's engine, at that time, must have been within one-hundred and fifty feet from Marshall street; or, if not, it must have been traveling at the rate of thirty-five to forty miles per hour. This hardly seems justified by the proofs. It was shown

that a person standing in Marshall street, north of the freight cars and after passing the concrete building, could see appellant's main track, and the engineer testified that two-hundred and fifty feet east of Marshall street he saw appellee's car going south. If the engineer could see appellee's car at that point, appellee, it would seem, if in the exercise of ordinary care for his own safety, could have seen the approaching train. The plat offered in evidence and the testimony tend to show that north of the freight cars and fifty or sixty feet north of the north rail of appellant's main track, there was a clear vision to appellant's right of way.

According to the testimony of appellee and his son, both of them were within seven feet of the north rail of the main track and the front wheels of the automobile were upon that rail before either of them knew anything about the approaching train.

"Where a railroad train and a person traveling on the highway with a vehicle are each approaching a crossing at the same time, it is not the duty of the servants of the railroad to stop the train, but, in keeping with the custom of the country, it is the duty of the traveler on the highway to stop and not attempt to pass in front of the advancing train." *Toledo, W. & W. Ry. Co. v. Jones,* 76 Ill. 311; *Chicago, B. & Q. R. Co. v. Damerell,* 81 Ill. 453; *Newell v. Cleveland, C., C. & St. L. Ry. Co.,* 261 Ill. 511.

"Telegraph poles, with the projecting arms for the support of wires, are indispensable to the business of a railroad, and it is no more negligence to have them than it is to have the railroad, which could not be carried on without them." *Chicago & A. R. Co. v. Pearson,* 184 Ill. 390; *Chicago & A. R. Co. v. Nelson,* 59 Ill. App. 308.

Neither is it negligence to permit freight cars to stand on the sidetrack of a railroad. *Chicago & A. R. Co. v. Nelson,* 59 Ill. App. 311; *Garland v. Chicago*

& N. W. Ry. Co., 8 Ill. App. 571; Wabash, St. L. & P. Ry. Co. v. Hicks, 13 Ill. App. 407.

Appellee presented some testimony as to due care and caution, upon his part, but it is not convincing and, indeed, the testimony as to appellee's contributory negligence and the negligence of appellant is very conflicting and would sustain a verdict for appellant as readily as the verdict arrived at in this case. In this state of the proofs, the instructions should have been plain and free from all doubt and announced legal principles, so that there could be no question in the minds of the jury as to the law. In the sixth instruction, given for appellee, the court informed the jury: "That while it is true that if the plaintiff or the driver of the automobile in question were guilty of contributory negligence, that fact alone would relieve the defendant company from all liability, yet, in order to find the plaintiff or the driver of the automobile in question guilty of contributory negligence, you must believe from the evidence that the plaintiff or the driver of the automobile failed to exercise that care merely which the law requires and they are only required by law to exercise such care and foresight as an ordinarily prudent man, possessing ordinary intelligence, would exercise under circumstances similar," etc.

The giving of this instruction was error. It places the burden of proof, as to contributory negligence, upon appellant. In other words, if the jury believed, from the evidence, that there was no testimony on either side bearing upon the subject of appellee's care and caution, or that such testimony was evenly balanced, then they should not find appellee guilty of contributory negligence. This is not the law. It was held in Chicago, B. & Q. R. Co. v. Damerell, supra, at page 454:

"As said by this court in Chicago, B. & Q. R. Co. v. Hazard, 26 Ill. 373: 'The books are full of cases

where, in such actions as this, the burden of proof is always held to be on the plaintiff, that he was himself exercising ordinary care and diligence at the time the accident happened.' *Aurora Branch R. Co. v. Grimes*, 13 Ill. 585; *Chicago, B. & Q. R. Co. v. Dewey*, 26 Ill. 255; *Illinois Cent. R. Co. v. Simmons*, 38 Ill. 242; *Chicago & A. R. Co. v. Gretzner*, 46 Ill. 74; *Chicago & N. W. R. Co. v. Sweeney*, 52 Ill. 325; *Chicago, B. & Q. R. Co. v. Patton*, 64 Ill. 510; *Chicago, B. & Q. R. Co. v. Lee*, 68 Ill. 576; *Chicago & A. R. Co. v. Becker*, 76 Ill. 25; Wharton on Negligence, par. 300; Shearm. and Redf. on Negligence, par. 25; *Illinois Cent. R. Co. v. Green*, 81 Ill. 19; 2 Redf. Am. Railway Cases, in note.''

And the court further held in the same case:

''This court has repeatedly declared the doctrine that it is the duty of persons about to cross a railroad track, to look about them, and see if there is danger; not to go recklessly upon the track, but to take the proper precautions themselves to avoid accidents at such places,'' citing numerous cases.

That correct instructions were given in behalf of appellant, as to burden of proof to show that appellee was in the exercise of ordinary care, does not correct the error. The instructions were contradictory and erroneous. *Illinois Match Co. v. Chicago R. I. & P. Ry. Co.*, 250 Ill. 396; *MacDonald v. Chicago Rys. Co.*, 286 Ill. 239.

Inasmuch as the case is to be remanded we shall consider another assignment of error by appellant as to the court's refusal to admit in evidence an amended ordinance of the City of Paris, passed and approved May 16, 1916.

Appellee offered in evidence an ordinance, ''To regulate railroads, cars and locomotives within the City of Paris,'' passed and approved January 1, 1912, providing it shall be unlawful to run passenger trains within said city at a greater rate of speed than ten miles per hour and fixing a penalty for the violation of such ordinance. There are other provisions of the

ordinance regulating the speed of freight trains to six miles per hour, and the time during which a street may be blocked by a train, and appellee's third count in the declaration is based upon this ordinance. The ordinance was duly published, but appellant objected to its introduction on the ground that it had been repealed. The ordinance was properly admitted in evidence. *St. Louis, A. & T. H. R. Co. v. Eggman,* 161 Ill. 159.

Appellant, at the close of appellee's case, offered in evidence an ordinance entitled "An Act to amend an Act entitled 'An Act to Regulate Railroads, Cars and Locomotives within the City of Paris,'" with the certificate of the city clerk attached reciting that it was a true and correct copy of an original ordinance on file in the records of his office, and "which ordinance has not been repealed, but is still in full force and effect." The ordinance purports to have been passed and approved May 16, 1916, but the certificate of the clerk contains no statement as to the publication or posting of said ordinance, and it has not been published. The ordinance contains a title and section 1. Section 1 purports to amend the former ordinance by making it unlawful to run passenger trains at a greater rate of speed than twenty miles per hour and other trains at a greater rate of speed than fifteen miles per hour; otherwise the provisions of the two ordinances are substantially the same. In the later ordinance section 1 is divided into three subheads, entitled section 1 (a), section 1 (b) and section 1 (c), and section 1 (c) reads as follows:

"All acts and parts of acts inconsistent with this act are hereby expressly repealed."

The court refused to admit this ordinance in evidence upon appellee's objection. Appellee contends that the ordinance, providing a penalty under the statute, cannot become a valid or binding ordinance until the same has been published according to law, and that no invalid act can constitute a repealing act.

Paragraph 67, ch. 24, Cahill's Ill. St. 1921, provides that all ordinances imposing any fine or penalty, etc., shall, within one month after they are passed, be published, etc., or, if there is no newspaper, etc., ''by posting copies of the same * * * and no such ordinance shall take effect until ten days after it is so published. And all other ordinances * * * shall take effect from and after their passage, unless otherwise provided therein.'' Paragraph 68 of the same chapter provides: ''All ordinances, and the date of publication thereof, may be proven by the certificate of the clerk, under the seal of the corporation. *And when printed in book or pamphlet form, and purporting to be published by authority of * * * the city council, the same need not be otherwise published; and such book or pamphlet shall be received as evidence of the passage and legal publication of such ordinances, as of the dates mentioned in such book or pamphlet,*'' etc.

These statutes have been construed by the courts in many cases. In suits brought to recover a fine, penalty or forfeiture, it has been held that the ordinance was not admissible in evidence without proof of publication in the manner pointed out in paragraph 68, *supra,* or in some other manner.

Based upon the authority of *Whalin v. City of Macomb,* 76 Ill. 49, approved in *People v. Donaldson,* 255 Ill. 26, it has been held that the provision of paragraph 67, *supra,* that the ordinance with a penalty, etc., shall be published within a month, is merely directory and that the same may be thereafter published and become a valid and legal ordinance. *Standard v. Village of Industry,* 55 Ill. App. 523; *Haas v. Hines,* 219 Ill. App. 527; and *Watts v. Wabash Ry. Co.,* 219 Ill. App. 554. In *Standard v. Village of Industry, supra,* it was held:

''It is a general rule that statutes directing the mode of proceeding by public officers are deemed ad-

visory, and strict compliance with their detailed provisions not indispensable to the validity of the proceeding itself, unless a contrary interest can be clearly gathered from the statute. Endlich, Interpretation of Statutes, sec. 437.

"The requirement in question we regard a mere direction given with a view to secure orderly and prompt conduct of the public business of municipalities, and intended merely for the guidance and government of the authorities upon whom the duty is imposed. Such requirements are directory only. Endlich, Inter. of Statutes, sec. 436.

"The designation of time in which the publication shall be made does not touch upon the power or authority of the village board to enact the ordinance."

And in *Haas v. Hines, supra:* "The proof of the date of the publication of an ordinance, by the certificate of a clerk, as provided in said section sixty-five [Cahill's Ill. St. ch. 24, ¶ 68] is not the exclusive and only method of making such proof. It 'may be' so proven are the words of the statute, and to hold that to be the only way such proof could be made would be error. Such provision of the statute that the publication must be in thirty days is directory only and the public is protected by the further provision that an ordinance shall not take effect until ten days after it is published. *Standard v. Village of Industry,* 55 Ill. App. 523, 525, 526."

If, then, the clerk, a ministerial officer, by publication or posting after the expiration of the month, without the further action of the city council, can give force and effect to the ordinance, it cannot be said to be invalid or void. The ordinance may be invalid or void in part and operative or in effect in part. *Wilbur v. City of Springfield,* 123 Ill. 395; *White v. City of Alton,* 149 Ill. 634; *Donnersberger v. Prendergast,* 128 Ill. 230; *Freeport St. Ry. Co. v. City of Freeport,* 151 Ill. 452; *City of Belleville v. Citizens' Horse Ry. Co.,* 152 Ill. 171; *City of Quincy v.*

*Bull,* 106 Ill. 338; *Village of Franklin Grove v. Chicago & N. W. Ry. Co.,* 196 Ill. App. 170.

In *Donnersberger v. Prendergast, supra,* it was held that where the constitutional and unconstitutional provisions of a statute are distinct and separable, the valid provisions may stand and be enforced, although the invalid one had not been introduced. In *Freeport St. Ry. Co. v. City of Freeport, supra,* it was held that it was a general rule that if a by-law be entire, each part having a general influence over the rest, and one part of it be invalid, the entire by-law is void; but if it consists of several distinct and independent parts, although one or more of them may be void, the rest are as valid as though the void clauses had been omitted.

In the *City of Belleville v. Citizens' Horse Ry. Co., supra,* it was held that a city cannot, by ordinance, forfeit to itself the property of a street railway company which has not performed its contract with the city; but a section of an ordinance which attempts to do this, though void, will not invalidate other sections of such ordinance which are distinct and separately enforceable, and in *City of Quincy v. Bull, supra,* the court held that where an ordinance of the city grants an exclusive use of its streets for thirty years for laying water pipes, etc., to supply the city with water, and fixes the compensation the city shall pay for the use of water supplied to it, the ordinance may be void as to the grant of an exclusive use and as to the indebtedness incurred thereby, it being in excess of the constitutional limit, yet valid as to the right of the grantee to construct the water works and lay his mains and pipes in the streets for the purpose of supplying water for private use.

There are two methods of repealing an ordinance: express, that is, by positive expression in the repealing legislation; and implied, that is, by subsequent valid legislation incompatible with the existing ordi-

nance. 28 Cyc. 285. A repealing ordinance comes under the heading, "All other ordinances * * * shall take effect from and after their passage," paragraph 67, ch. 24, *supra,* and does not require to be published. Turning to the ordinance in question, it is to be observed that section 1 is divided into three subsections: (a), (b) and (c). Section "1 (c)" provides: "All acts and parts of acts inconsistent with this act *are hereby expressly repealed.*"

The language used is that of an express repeal. The act passed was a valid act, to become operative in ten days after it should be published or posted. The matter of publishing or posting was a ministerial act to be performed by the clerk. Section "1 (b)" of the ordinance provided that the act or amendment should be in full force and effect from and after the date of its passage. It was in the statutory form of an ordinance. There was no saving clause or conditions in it. To support appellee's contention as to this ordinance, it becomes necessary to hold that the power lay with the city clerk to keep the ordinance of 1912 of the City of Paris, restricting the speed of passenger trains within said city, to ten miles per hour, still in force in 1922 as a ministerial act on the part of said clerk, regardless of the express legislative declaration of the city council in 1916, permitting an increase in such speed to twenty miles per hour, and regardless of the express repeal of the former act. In the opinion of this court the ordinance of 1916 effected a repeal of the speed provisions of the ordinance of 1912. Any other construction of the ordinance of 1916 delegates power to a ministerial officer to effect repeals or maintain an ordinance in force, at his pleasure or whim, and is not supported by the policy of our laws. The ordinance of 1916 should have been admitted in evidence.

For the errors pointed out the judgment of the cir-

cuit court of Edgar county is reversed and the cause
remanded to that court for further proceedings.

*Reversed and remanded.*