Robert Keturosky, Appellee, v. Indiana Harbor Belt
Railroad Company, and Chicago, Milwaukee, St.
Paul and Pacific Railroad Company, Appellants.

Gen. No. 45,823.

Opinion filed May 12, 1953. Rehearing allowed September 21, 1953. New opinion filed December 1, 1953. Rehearing denied December 1, 1953. Released for publication January 22, 1954.

EDWIN R. ECKERSALL, of Chicago, for appellants; CARSON L. TAYLOR, of Chicago, of counsel.

JAMES A. DOOLEY, of Chicago, for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

On March 26, 1948 plaintiff, while driving an automobile across the railroad tracks of the Indiana Harbor Belt Railroad Company at twenty-fifth avenue in Melrose Park, Illinois, was struck by the engine of a train operated by the Chicago, Milwaukee, St. Paul and Pacific Railroad Company. He was seriously injured, and upon trial, the jury returned a verdict of $45,000. The usual post-trial motions were overruled, and judgment was entered on the verdict.

Twenty-fifth avenue at the place in question is described as a heavy traffic street (23 feet wide) running in a north and south direction. A series of twelve tracks cross it. Part of defendants' Norpaul Yard is east and part of it is west of the crossing. Approaching the crossing from the south there is a 5% grade, that is, a rise of five feet in one hundred feet of travel. There were approximately 70 trains and 30 switch movements over the crossing per day. The crossing is wholly unguarded, save for a sign on the east side of twenty-fifth avenue warning that there is a railroad crossing ahead, and a standard railroad-crossing sign south of the most southerly rail.

89

■

On the night of the accident, plaintiff, who was 22 years old left his home sometime shortly before 8:00 p. m. and drove over this crossing to a bowling alley in Melrose Park, where he bowled until about 11:00 p. m. He left the alley and drove north on twenty-fifth avenue toward the crossing in question. It was a rainy, foggy night and the visibility was poor. Plaintiff was alone in the car and he was the only witness in his own behalf. One witness testified for defendants—the engineer of another engine which was near the scene of the accident. The crew of the train which struck plaintiff did not appear as witnesses, and the efforts of plaintiff's counsel to obtain their names was thwarted by objections of defendants. Assuming, as we must in the light of the verdict and judgment, that the jury and court believed plaintiff, what happened immediately prior to the accident is as follows:

When plaintiff was about 200 feet south of the crossing, he saw a locomotive and caboose being operated in a northeasterly direction on the first or most southerly track. It was 200 or 300 feet southwest of the crossing. There was a bright headlight on this locomotive. Plaintiff continued north until he was about 40 feet south of the first track, when he brought his automobile to a stop. He watched the engine and caboose, and when the caboose was approximately in the center of the road, he started his car very slowly, looking to the right and left. His attention was attracted to an engine standing west of twenty-fifth avenue on one of the more northerly tracks. Its headlight was burning and it was steamed up. After the engine pulling the caboose had passed over the crossing and was about 100 feet beyond it, plaintiff looked to his right and then started over the track. Just as he got to the second track from the south, he saw a dim headlight and the front of an engine going west.

This locomotive struck his car between the bumper and the end of the body. After the impact, the headlight on the engine became bright. Plaintiff testified that there was no whistle or bell sounded by the westbound engine. On behalf of defendants, the engineer we referred to testified that he was on an engine on the fifth track from the south end of the crossing. He corroborated plaintiff's story with respect to poor visibility and that plaintiff went across the tracks slowly. At one point he said he could not see the automobile because a northeast-bound train was between it and him. He was not able to say whether or not plaintiff stopped, but he did see plaintiff's car move over the crossing at not more than five to ten miles per hour.

The charges on which plaintiff relies are the dangerous condition of the unguarded crossing; negligent operation and maintenance of the train; negligent maintenance of the crossing in a dangerous and defective condition in allowing a tree to be within 500 feet of the right of way of the crossing; failure to keep a proper and sufficient lookout; the use of an insufficient headlight; and the failure of the locomotive to ring a bell or sound a whistle.

Defendants rely for a reversal on three grounds— that plaintiff was guilty of contributory negligence as a matter of law; that the alleged negligence of defendants in allowing a tree to be within 500 feet of the right of way was improperly presented to the jury by plaintiff's instruction No. 2, in that the tree referred to was not on the railroad right of way; and that no negligence on the part of defendants was proven.

Defendants' point with respect to lack of due care is that plaintiff proceeded over the crossing as soon as the engine and caboose for which he had stopped had cleared the crossing; that his view to the north-

91

east was still obstructed; and that he should have waited until he had a clear view enabling him to see the train approaching from the northeast. It is argued that instead of so doing, he went on to the track immediately behind the caboose that was moving over the crossing. This latter is defendants' interpretation of plaintiff's testimony and is not, in our opinion, borne out by a reasonable understanding of it. From the whole of the testimony it appears to us that plaintiff did not start across the track until the caboose had gone far enough beyond the crossing so that he could see several hundred feet to the northeast down the second track, and that when he started to cross that track, the train was upon him without giving him any warning and before he could do anything about it.

It is well established that only where it can be said that all reasonable men would agree that plaintiff failed to exercise due care, can it be so found as a matter of law. A jury of twelve and the trial judge have already found that plaintiff was in the exercise of due care. Only a case approaching a gross miscarriage of justice would warrant our reversing a judgment on that ground. What is the duty of an automobilist approaching an unguarded railroad crossing? In early cases courts placed a high and rigid standard of care on the public when crossing such tracks. They started with the rule of "Stop, Look and Listen," and "if necessary, get out of your car," so that the fact of an accident itself was considered almost conclusive proof that it was due to negligence. JUSTICE HOLMES in *Baltimore & Ohio R. Co. v. Goodman*, 275 U. S. 66, said that this was a standard of conduct so clear that even though a jury might have found otherwise, it was up to the courts to enforce it. The emphasis on such a standard shifted as the courts sought to reconcile it with the persistent habits of the public.

92

In *Pokora v. Wabash Ry. Co.,* 292 U. S. 98, the Supreme Court found that the opinion of JUSTICE HOLMES in the *Goodman* case had become a source of confusion, in that it imposed a standard for application by the judge that "has only wavering support in the courts of the states." The court considered that after forty years of experience with automobiles, we now know that motorists do not approach a railroad crossing with timidity and take heed of a dire danger before them. The behavior of plaintiff was normal. He was confronted with the necessity of crossing an unguarded series of heavily used railroad tracks with trains approaching in different directions and he proceeded across slowly, keeping a watchful lookout, when he was struck by a train which gave no warning and which did not have an adequate headlight. The issue of due care was properly presented to the jury. *Bales v. Pennsylvania R. Co.,* 347 Ill. App. 466; *Smith v. Illinois Central R. Co.,* 343 Ill. App. 593; *Applegate v. Chicago & N. W. Ry. Co.,* 334 Ill. App. 141; *Pokora v. Wabash Ry. Co.,* 292 U. S. 98; *Chicago & N. W. Ry. Co. v. Hansen,* 166 Ill. 623; *Chicago & A. R. Co. v. Pearson,* 184 Ill. 386; *Gills v. New York, C. & St. L. Ry.,* 342 Ill. 455.

██ The only charge of negligence concerning which there is any serious question was that defendants negligently maintained their crossing in a dangerous and defective condition, in that they "allowed a tree to be within 500 feet of the right of way of said crossing." In our original opinion we found that there was substantial error in this instruction in that the tree was not on defendants' right of way and, therefore, defendants could not be charged with negligence in failing to remove it. For that reason we felt the judgment should be reversed and the cause remanded. Plaintiff filed a petition for rehearing and pointed out that there

93

was evidence tending to prove that the tree was actually on the right of way of the railroad company. We granted a rehearing in order to be more fully informed on that question. We felt that the question of the location of the tree had an important bearing on the propriety of the instruction. Having examined the petition for rehearing, the answer thereto, photographs, and other evidence, it is now apparent to us that there is evidence tending to prove this tree is located on the right of way. We were misled by the manner in which this instruction was written and by the way in which the issue was presented to this court. However, we are now of the opinion that there is no reversible error in the giving of this instruction.

*Judgment affirmed.*

TUOHY and ROBSON, JJ., concur.