Sandra K. RUCKER, Herbert Rucker, Cheryl Dunham, etc., and James Dunham, Plaintiffs-Appellants,

v.

WABASH RAILROAD COMPANY, Defendant-Appellee.

No. 17392.

United States Court of Appeals Seventh Circuit.

Nov. 10, 1969.

Rehearings Denied Dec. 2, and Dec. 3, 1969.

148

Thomas F. Londrigan, Robert Weiner, Springfield, Ill., for appellants.

Alfred F. Newkirk, of Giffin, Winning, Lindner, Newkirk & Cohen, Springfield, Ill., for appellee.

Before KNOCH, Senior Circuit Judge, CUMMINGS and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiffs brought this diversity action for personal injuries resulting from a train-automobile collision on the Constant Street railroad crossing of defendant Wabash Railroad Company at Dawson, Illinois. Four of the counts of the Amended Complaint claimed a statutory violation and a wilful statutory violation. The remaining counts were for negligence and wilful and wanton misconduct. At the close of the evidence, the court directed a verdict for the defendant on the statutory counts, and the jury returned a verdict for the defendant on the common law counts. Plaintiffs appeal from the final judgment entered against them.

On the afternoon of March 25, 1964, plaintiff, Cheryl Dunham, was a passenger in an automobile being driven by her aunt, Sandra Rucker, also a plaintiff. After turning off Route 36 onto Constant Street, Mrs. Rucker's automobile crossed the passing track and stalled on the main track of defendant. Cheryl Dunham jumped out of the car and unsuccessfully attempted to extricate her aunt and to push the car off the track. She then ran down the track away from the eastbound train and was injured when the train, which was approaching Dawson, propelled the car into her. Her aunt was badly injured at the same time.

At the Constant Street crossing, there are three sets of tracks: a passing track, the main track and a house track. The tracks run in an east-west direction and are intersected by Constant Street running north and south. There was testimony from witnesses that at the time of the accident, 82 empty freight cars were stored on the passing track west of the crossing, commencing at a distance of 150 to 564 feet from the crossing. The passing track is south of the main track and the house track is north of it. In 1949, the President and Trustees of the village board of Dawson, Illinois, complained to the Illinois Commerce Commission, seeking the establishment of special protective facilities at this crossing. The Commission found that

various obstructions, specifically including standing railroad cars, rendered the crossing "extra hazardous," and the railroad thereafter installed flasher lights.

The first question for consideration is whether the district court properly struck Counts IX–XII of the complaint alleging a violation of Rule 205 of General Order 138 of the Illinois Commerce Commission and Ill.Rev.Stat. (1967), ch. 111⅔, § 77.[1] The complaint charged that the cars standing on the passing track constituted "unnecessary obstructions" which materially obscured the view of oncoming trains to highway travelers in violation of Rule 205, and therefore rendered defendant liable under the statute.

Defendant's motions for directed verdicts as to the four statutory counts claimed that there was no evidence that the defendant violated the statute, or that any violation was the proximate cause of the plaintiffs' injuries or was wilful. The court's remarks at the conference on instructions reveal that these motions were granted on the theory that under the *ejusdem generis* canon of construction, the phrase "other unnecessary obstructions" in Rule 205 refers to permanent vegetation obstructions such as brush, shrubbery, trees, weeds, crops and the like, but not to movable freight cars. In support of the trial court's rulings, the defendant also contends that the Commission adopted Rule 205 solely to effectuate the language contained in

Section 58 of the Public Utilities Act which provides in part that

"[e]very railroad * * * shall remove from its right of way at all grade crossings within the State, all brush, shrubbery and trees for a distance of not less than five hundred (500) feet in either direction from each grade crossing." 111⅔ Ill.Rev. Stat. § 62 (1967).

The statute also empowered the Commission to designate "extra hazardous" crossings and specify steps which the railroad should take in order to protect persons and property. Defendant does not contend that the Commission lacked the power to amplify the provisions contained in Section 58. In fact defendant concedes that Rule 205 has enlarged the class of objects specifically enumerated in the statute by the inclusion of "weeds and crops." The railroad argues, however, that by Rule 205 the Commission enlarged the statutory class only to the extent of natural objects. In our view, this interpretation of the rule is too restrictive.

Administrative regulations, like statutes, must be construed by courts, and the same rules of interpretation are applicable in both cases. II Sutherland, Statutes and Statutory Construction, § 4007, p. 280 (3d ed. 1943). Like statutes, administrative rules are to be construed to effectuate the intent of the enacting body. United States v. Miller, 303 F.2d 703 (9th Cir. 1962). To this end, courts look first to the plain

---

1. Rule 205 provides:

"Every railroad company shall keep its right of way reasonably clear of brush, shrubbery, trees, weeds, crops, and *other unnecessary obstructions* for a distance of at least 500 feet each way from every grade crossing where such things materially would obscure the view of approaching trains to travelers on the highway." (Emphasis supplied.)

Chapter 111⅔, § 77, in turn, provides:

"In case any public utility shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done either by any

provisions of this Act or any rule, regulation, order or decision of the Commission, issued under authority of this Act, such public utility shall be liable to the persons or corporations affected thereby for all loss, damages or injury caused thereby or resulting therefrom, and if the court shall find that the act or omission was wilful, the court may in addition to the actual damages, award damages for the sake of example, and by the way of punishment. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

language of the statute or rule and the legislative purpose behind its enactment. Where statutory language and objective appear with reasonable clarity, they are not to be overcome by resort to mechanical rules of construction, whose function is not to create doubts but to resolve them when the real issue or statutory purpose is obscure. United States v. California, 297 U.S. 175, 186, 56 S.Ct. 421, 80 L.Ed. 567; United States v. Rice, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982. This admonition is as applicable to the doctrine of *ejusdem generis* as to other interpretive aids. The limits to the use of that doctrine have been recognized even in the construction of criminal statutes, which are ordinarily narrowly construed. Gooch v. United States, 297 U.S. 124, 56 S.Ct. 395, 80 L.Ed. 522. As the Supreme Court observed in United States v. Alpers, 338 U.S. 680, 682, 70 S.Ct. 352, 354, 94 L.Ed. 457:

"When properly applied, the rule of *ejusdem generis* is a useful canon of construction. But it is to be resorted to not to obscure and defeat the intent and purpose of [the enacting body], but to elucidate its words and effectuate its intent. It cannot be employed to render general words meaningless. Mason v. United States, 260 U.S. 545, 554, 43 S.Ct. 200, 67 L.Ed. 396."

■ In the present case the clear intent of the Commerce Commission was to place an affirmative duty upon railroads to preserve visibility for highway travelers approaching crossings. Although the legislature expressed a similar intent in the statute, Rule 205 expanded the class of prohibited "obstructions" beyond that covered by Section 58. The nature of the duty imposed upon the railroads and the underlying purpose of the Rule militate against the narrow construction urged upon us. The specific references to natural obstacles indicate the breadth of the duty imposed by the Rule rather than it narrowness, for it is even more onerous to have to remove natural obstacles than to refrain from placing obstructions such as freight cars within 500 feet of crossings. The construction given to this language by the district court unreasonably constricts the scope of the Rule and virtually reads out "obstructions" in any meaningful sense. We do not feel that the Commission would be so careless and arbitrary as to require railroads to police their tracks for shrubs, trees and grass, and not give them the same responsibility with regard to man-made obstructions. Moreover, in 1949, in passing upon the complaint of the Village of Dawson requesting special protective facilities at this crossing, the Commerce Commission found that freight cars on the Constant Street house track formed

"*obstructions* to the view of trains approaching the Constant Street crossing from the east so that no view of said trains can be had by highway traffic approaching the crossing from the north until said trains or highway traffic are within very short distances of the crossing"

and formed

"*obstructions* to the view of trains approaching from the west" (emphasis supplied).

Since the plain meaning of "other unnecessary obstructions" is broad enough to include freight cars, the rule of *ejusdem generis* should not have been applied. Hagen v. City of Rock Island, 18 Ill.2d 174, 178–180, 163 N.E.2d 495 (1959); II Sutherland, Statutes and Statutory Construction, § 4909 (3rd ed. 1943).

■ Our conclusion that freight cars constitute "obstructions" within the meaning of Rule 205 does not, however, dispose of the issues presented by the application of that regulation to the present case. Rule 205 requires removal of only those obstructions which are "unnecessary." "Necessity" in the sense required by the Rule is a flexible concept. It does not demand that the object be the *sine qua non* of continued operation of the railroad. Rather, to fall outside the scope of the Rule, the object need only perform some useful and meaningful function contributing to the work-

ings of the railroad. Obstructions which bear only a remote or tangential relation to railroad operation, or which are located at a particular place only by virtue of convenience, would be "unnecessary." Clearly, trees and other natural obstacles serve no aspect of railroading. Likewise, abandoned machinery, billboards and other items of dross might well fall within the same classification. In the present case, there was evidence that the freight cars stood on the passing track next to the main track for approximately two years. A third house track, previously used for storage purposes, may have remained empty on the other side. There was no evidence offered by defendant to establish any reason, other than convenience, for the placement of freight cars on the passing track for such a prolonged span of time. Hence we are of the opinion that plaintiffs satisfied whatever initial evidentiary burden they had for establishing a prima facie case that the obstructions were "unnecessary."

Our decision on this matter is consistent with the 1949 Order of the Commission which declared this crossing "extra hazardous." No challenge to the "necessity" of storing cars on the house track seems to have been raised at that time. The 1949 Order might be taken as an indication that freight cars on the house track, while constituting an obstruction, were nevertheless of such sufficient importance to the operations of the railroad and the grain elevators that their removal would not be appropriate. The location of cars on the passing track, however, may lack such a justification and, as a result, might constitute a violation of Rule 205 which was not considered or covered in the 1949 Order. Rule 205 places the additional burden of removal upon the railroad in the absence of justification for the location of the obstruction within 500 feet of the crossing. The duty imposed upon the railroad by Rule 205 would not be discharged by the automatic flasher light signals, however adequate those signals might be as prophylactics against the hazards of the obstacles mentioned in the 1949 Order.

Plaintiffs' reliance upon the alleged violation of Rule 205 is predicated upon the assumption that violation of the Commission's Rule created liability on the part of the railroad imposed by Section 73 of the Public Utilities Act (Ill. Rev.Stat. ch. 111⅔, § 77). That Section establishes that non-compliance with the provisions of a "rule, regulation, order or decision of the Commission," such as Rule 205 of General Order 138, shall constitute the breach of a legal duty sufficient to impose liability upon the utility regardless of whether such conduct would constitute "negligence" under the traditional standards of the common law. [2] Plaintiffs, however, wish us to go

---

2. There may be some confusion in the cases which have arisen under this Section concerning the relation of liability imposed by the statute and that imposed under negligence standards of common law. Several cases have involved counts of "negligence" based upon violations of Sections 32 and 73 of the Public Utilities Act (Ill.Rev.Stat. ch. 111⅔, §§ 32 and 77). In each instance, due to the lack of any specific standard of conduct set out in Section 32, the court required that the plaintiff establish that the "violation" of that section was "negligent." See Goodman v. Chicago & E. I. Ry. Co., 248 Ill. App. 128, 133–134, (1928) (holding that failure of railroad to maintain a flagman or bell signal at a crossing did not violate Sections 32 and 73 without a showing of negligence in the absence of any order from the Commission requiring such behavior of the railroad) ; Milford Canning Co. v. Central Illinois Public Service Co., 39 Ill.App.2d 258, 264–265, 188 N.E.2d 397, 4 A.L.R.3d 587 (1963). Although there were no specific references to Rule 205, Sections 58 or 73 of the Act, Keturosky v. Indiana H. B. R. Co., 1 Ill.App.2d 88, 116 N.E.2d 410 (1954) upheld a jury instruction permitting the finding of "negligence" where there was evidence indicating that defendant railroad had one tree on its right of way within 500 feet of the crossing. These references to "negligence" do not persuade us that violation of Rule 205 is merely "evidence of negligence" from which a jury may, or may not, infer a duty of due care on the part of the railroad. It is well settled that statutory prohibitions may be adopted as

further and establish strict liability for violation of the Commission's rules and orders. This we decline to do. Our decision in Lippincott v. Wabash Railroad Co., 295 F.2d 577, 580 (7th Cir. 1961), expressly eschewed the notion that this Section was intended to make the railroads the

> "insurers as to all persons injured at railroad crossings where some obstruction to the view may exist on the right of way within 500 feet of a crossing."

The reasoning that led us to require evidence establishing proximate cause in *Lippincott* also compels us to hold that recovery for a violation of Rule 205 pursuant to the provisions of Section 73 of the Public Utilities Act may be had only where there has been due care on the part of the plaintiff.

We conclude that the trial court should not have directed a verdict for the defendant on Counts IX through XII. There was sufficient evidence to warrant a finding by the jury that the defendant railroad violated Rule 205 by failing to keep its right of way reasonably free of freight cars unnecessarily located on the passing tracks. Although the jury verdict may have been based on the feeling that the placement of cars on the side track did not constitute negligence (cf. Chicago & A. R. Co. v. Pearson, 184 Ill. 386, 390, 56 N.E. 633 (1900); Williams v. Pennsylvania R. Co., 235 Ill.App. 49 (1924); Bottorff v. Spence et al., 36 Ill. App.2d 128, 183 N.E.2d 1 (1962)), if Counts IX–XII had not been stricken the jury could still have found a violation of the Rule and no contributory negligence. A jury must now decide whether defendant violated Rule 205, whether this proximately caused plaintiffs' injuries, and whether there was contributory negli-

gence on their part under the circumstances of this case.[3]

█ There remains the question whether the statutory provision permitting the "court" to impose punitive damages after it has found a violation to be "willful" intends the jury or judge to decide the issue. The term "court" need not always be construed as referring to the judge in the performance of his duties. It also has an institutional meaning and may sometimes refer to the deliberative body of jurors. In the present case, both parties have assumed that the counts based upon an alleged wilful violation of a statute or rule should be decided by the jury in the same manner as wilful negligence. We agree, and therefore hold that as with the common law counts, the wilfulness of any violation under Counts X and XII should have been submitted to the jury, along with the questions of plaintiff's contributory wilful and wanton misconduct.

█ Plaintiffs have also raised objections to several matters during the conduct of the trial which, they contend, require reversal on both the statutory and common law causes of action. They point to the exclusion of testimony by several witnesses offered to prove notice to the railroad of the presence of the obstruction and its dangerous character. The first testimony was of William L. Lamkey, a farmer in the region, who was asked to testify concerning the presence of cars on the passing track during the two years prior to the accident in question. Defendant objected on the ground that the evidence was irrelevant in that it did not tend to show the condition of the crossing on the night in question. On this basis, the evidence was ruled inadmissible. We disagree. Our holding

standards of care in negligence actions. In the absence of any specific statutory statement creating liability for such violations, it is possible that the Commission's rules might be submitted to the jury as standards of conduct establishing a duty. In the present case, however, the statute specifically makes non-compliance with Rule 205 the basis for re-

covery of damages without reference to common law negligence.

3. Thus while the flashing signal lights would not constitute an excuse for the presence of the cars under Rule 205, they and other safety devices would provide the basis for a finding of contributory negligence on the part of the plaintiff if in proper operation.

with respect to Rule 205 makes it clear that the continued presence of freight cars on the siding was relevant to the determination of whether the railroad failed to keep its right of way "reasonably clear" of "unnecessary obstructions," as required by the Rule. In our opinion the prolonged presence of these cars may indicate not only the lack of any necessity for their placement on that particular track, but also goes directly to the reasonableness of the railroad's failure to remove the obstacles. In addition, as plaintiff's counsel pointed out in his request for an offer of proof, both the statutory and common law causes of action included counts of wilful misconduct on the part of defendant. The evidence of continued storage of cars on the passing track tended to show the defendant's disregard of the dangerous condition caused by the obstructions. It is no answer that the Wabash Railroad Company admitted in an interrogatory that they had located cars there for the past two years. Moreover, the rejected testimony of Mr. Lamkey that at no time during the past two years had the cars on that siding been further than 500 feet from the crossing tended to add credence to his testimony concerning the exact distance of the cars from the crossing on the night of this accident.

The trial court also excluded evidence offered by plaintiffs in the form of a memorandum made by the superintendent of Schools, Carroll Lowe, of a telephone conversation in 1962 in which he gave notice to the railroad of the dangerous condition resulting from the placement of cars on the passing track. This was excluded as hearsay by the court.[4] Likewise, the testimony of complaints by Carroll Lowe and others was taken only in the absence of the jury. This testimony tended to establish notice to the railroad, not only of the location of the cars, but specifically of their dangerous effect on visibility. Defendant has objected that this and other testimony to the same effect are barred by a stipulation between the parties limiting evidence to observations within one year of the present accident. We find no indication of any such stipulation in the record before us. Defendant has referred to several points in the record, none of which discloses to our satisfaction the existence of any stipulation agreed to by plaintiffs limiting testimony to events within one year of the accident in question.[5]

The evidence thus excluded by the district court was relevant to several issues in the case. Its exclusion was erroneous, and that error was sufficiently prejudicial to warrant a new trial on the common law negligence counts as well as on the statutory counts.[6]

---

4. We do not feel called upon to determine the correctness of the district court's hearsay ruling. The same evidence was immediately given thereafter by Mr. Lowe himself. Moreover, we note that, as a memorandum confirming notice, the writing offered as Plaintiffs' Exhibit 9 is of somewhat questionable value.

5. There was no error in refusing to permit the introduction of the 1949 Order in which the Commission declared boxcars on the house track to be "obstructions," or the letter of compliance sent by defendant in 1950 (plaintiffs' Exhibits 11 and 29). These are not relevant to establish that the present injuries were proximately caused by the obstructive effects of the boxcars upon the passing tracks. The 1949 Order does establish that boxcars constitute "obstructions" but it does not present relevant evidence establishing that these freight cars constituted an obstruction in violation of Rule 205. In addition, submission of the contents of the Order to the jury could too easily prejudice their opinions concerning the other elements needed to establish a violation of Rule 205 and convince them that they were compelled so to find. In light of the relatively slight value which they lend in determining the "obstructive" character of freight cars, they should be excluded.

6. Plaintiffs have also challenged several other rulings of the district court. First, they have objected that certain testimony given by defendant's witness, Thomas Polley, who testified as to the results of tests he made checking the circuits of the flasher signals, was hearsay. Upon

Because a new trial is necessary on both causes of action, we will take this opportunity to clarify some matters of apparent confusion concerning the discoverability of documents and the answers to interrogatories.

 Prior to trial, defendant refused to answer two interrogatories. Interrogatory 64 actually contained two questions: first, it asked, in effect, for an admission of the presence of boxcars within 500 feet of the crossing and, second, assuming that proximity, the interrogatory sought the reason for such placement. Defendant's refusal to answer on the grounds that the question called for a conclusion was not proper. Our holding on Rule 205 makes clear that the distance of the cars from the crossing and the reason for the presence of the cars on the siding were material to the case. While the defendant might have objected to the question's form, there was nothing conclusory in the information requested. We agree, however, that Interrogatory 70 about the 20-year use of the passing track did not call for an answer. It contained an incomplete sentence the meaning of which defendant was under no obligation to decipher. Moreover, the information was not shown to be material to the issues of the case.

 More difficult are the questions regarding the discoverability of the contents of statements made by employees of defendant railroad as witnesses to the accident. Each party had obtained statements made by those employees. Neither party was willing to supply his opponent with copies of the statements. Both parties supported their refusals on the basis of privilege and "work product." Neither party may successfully assert the attorney-client privilege as to the statements of non-party witnesses. Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451. This is true of defendant's statements given by its servants and agents in this case. None were of such rank as to qualify as representative of the corporate client. Nor do the facts before us support the claims that the witnesses' statements constitute the "work product" of either party's attorney under the doctrine set out in Hickman v. Taylor. The statements do not appear to have been taken by the attorneys, but by investigators employed by the parties or their insurers. Cf. Ulrich v. Ethyl Gasoline Corp., 2 F.R.D. 357 (W.D.Ky.1942); Bough v. Lee, 29 F.Supp. 498 (S.D.N.Y. 1939). Even though the defendant's attorney may have retained his investigator with a view to impending litigation, we have been shown no evidence that the accident reports obtained by that investigator in any way represent the "mental impressions" or other indicia of the attorney's work product. In addition, there is no evidence of any attempt by either party to establish "good cause" as is required by Rule 34, nor is there any indication of any discrepancy between

cross-examination, Mr. Polley testified that he learned the exact distance of the trip switch which initiated the flashing of the lights from the "engineering office in St. Louis." Since this was in response to the question of plaintiffs' counsel on cross-examination, he should not be heard to challenge its admissibility. Moreover, even if it were inadmissible hearsay, it would amount to harmless error because it merely corroborated the other testimony of the witness.

Similarly, there was no error in the court's exclusion of the taped statement by Cheryl Dunham while under hypnosis on March 3, 1967. This was submitted on redirect examination but did not clarify or explain any elements of her testimony called into question by cross-examination. It merely corroborated and restated her testimony on direct examination.

Finally, there was no error in the instructions given to the jury or in the refusal of the judge to instruct the jury on the failure of the defense to call a witness, C. R. Fountain, its superintendent at Decatur, Illinois. Defendant was not bound to produce the witness. His presence was not requested and there is no indication that he had personal information. None of the eight assailed instructions which were given were argumentative comments on the evidence or otherwise erroneous.

the various statements made by these witnesses. No showing of necessity was made indicating that the witnesses could not be deposed on their stories otherwise fixed at an early date. That each side had its own statements is irrefutable evidence of the early availability of these witnesses. There was, therefore, no error in the district court's refusal to order production of the various statements sought.

For the reasons set out in this opinion, the judgment is reversed and the cause is remanded for a new trial.