MATTER OF YEUNG

In Deportation Proceedings

A-15750231

*Decided by Board March 24, 1970*

(1) A special inquiry officer has authority under current regulations to re-open deportation proceedings for the limited purpose of considering a new grant of voluntary departure to an alien who had permitted a prior grant of that privilege to expire; however, such authority does not empower a special inquiry officer to fix the departure time when authorizing voluntary departure anew.

(2) While ordinarily voluntary departure should not be granted anew in crewmen cases in the absence of strong extenuating circumstances—such as the presence of close family relationships in this country or where it appears that the failure to depart was due to circumstances beyond the alien's control—, each case must be determined on its own facts, and in exercising discretion a special inquiry officer must appraise the factors which led to the delay. In the instant case, voluntary departure is granted anew by the special inquiry officer based upon his conclusion that respondent could reasonably have construed as extensions of voluntary departure time the Service letters advising him that he would be permitted to remain in the United States pending Congressional consideration of private bills introduced in his behalf.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer than permitted.

ON BEHALF OF RESPONDENT:
John L. Murff, Esquire
225 Broadway
New York, New York 10007
(Brief submitted)

ON BEHALF OF SERVICE:
William B. Gurock
Trial Attorney

Charles Gordon
General Counsel
(Brief submitted)

This appeal raises three questions: (1) whether a special inquiry officer has power under current regulations [1] to reopen deportation proceedings for the limited purpose of considering a

---

[1] 8 CFR 242.22; 8 CFR 244.1 and 244.2.

new grant of voluntary departure to an alien who had permitted a prior grant of that privilege to expire; (2) whether, if he has such power, the special inquiry officer may also fix the departure time; and (3) whether, on the facts of this case, relief should not have been denied in the exercise of discretion.

The facts are not in substantial dispute. Respondent is a 22-year-old unmarried male alien who was admitted to the United States as a crewman on January 22, 1966 and has remained here since. At a hearing before a special inquiry officer at which he was represented by counsel, he conceded deportability on the above-stated charge. In an order dated December 20, 1967, the special inquiry officer granted respondent's application for voluntary departure, with an alternate order for his deportation if he failed to depart when and as required by the District Director. His application under section 243(h) of the Act for withholding of deportation to Hong Kong, the alternate place of deportation, was denied. Respondent did not appeal.

The District Director fixed February 7, 1968 as the limit for voluntary departure. On respondent's failure to depart, a warrant for his deportation was issued on February 9, 1968.[2] On the same day, the District Director wrote him that since a private bill in his behalf was under Congressional consideration, he would be permitted to remain in the United States until February 1, 1969, or 30 days following adverse action on the bill, whichever occurs sooner.

The private bill was not enacted and on February 19, 1969 the District Director wrote respondent that arrangements for his deportation would be made on or about March 2, 1969. In the interim, another private bill had been introduced in respondent's behalf. On February 24, 1969 the District Director wrote respondent that he would be permitted to remain until February 1, 1971 or 30 days following adverse action on the bill whichever occurs sooner. On June 26, 1969 the District Director wrote respondent that adverse action had been taken on the private bill and that steps were being taken to effect his deportation. On July 17, 1969 he was notified to surrender on July 28, 1969 for deportation to Hong Kong.

On July 24, 1969 respondent filed a motion asking that the voluntary departure privilege be restored and that he be permitted to surrender and depart under safeguards upon purchasing his own transportation; or in the alternative, that the deportation

---

[2] The record does not reflect that respondent was notified of the issuance of the deportation warrant.

proceedings be reopened to permit a new application for voluntary departure before a special inquiry officer. The District Director declined to restore voluntary departure [3] and a hearing was held by the special inquiry officer on the motion to reopen.

The Service's trial attorney opposed reopening on two grounds: First, that under the amended Service regulations, the special inquiry officer lacked power to grant voluntary departure anew; and second, that in any event this relief should be denied in the exercise of discretion because respondent had allegedly resorted to dilatory practices to ward off his enforced departure. Respondent's attorney contended that not only respondent but also he himself had been misled by the Service's letters into believing that what was being granted during the pendency of the private bills was an extension of voluntary departure time rather than a stay of execution of a deportation order.

On July 29, 1969, in a detailed and well-considered opinion, the special inquiry officer concluded that he has jurisdiction to grant voluntary departure anew and that such relief was warranted on the facts of this case. To avoid the possibility of further appeal or litigation, the special inquiry officer entered an order which, in form, denied the motion to reopen but which provided further that "if [respondent] leaves the United States within the period of seven days from the date of this order, namely, on or before August 6, 1969, the order of deportation will be deemed to have been simultaneously lifted and the respondent will be deemed to have departed from the United States under an order of voluntary departure in lieu of deportation." It is this order which is before us on appeal by the Service's trial attorney.

In practical effect, despite its negative form the special inquiry officer's order affirmatively granted voluntary departure anew and fixed the departure time. Viewed in this light, the order poses the three issues stated in the opening paragraph of this opinion.

In presenting the Service's views on this appeal, its General Counsel has receded from the position taken by the trial attorney on one of the issues. In his memorandum in lieu of oral argument, the General Counsel states that it is the Service position that under current regulations the special inquiry officer does have power to reopen and to grant voluntary departure. The General Counsel insists, however, that in the exercise of discretion as

---

[3] Presumably, what respondent sought and what the District Director denied was a *nunc pro tunc* extension of the expired voluntary departure time. See page 3081 of Service Operations Instruction 243.1, available in the Service's public reading room.

a general policy the privilege of voluntary departure should be granted only once, in the absence of very strong extenuating circumstances, which he feels are lacking here. Finally, the General Counsel argues that under the current regulation, only the District Director has power to fix the departure time when voluntary departure is thus granted anew.

The first two questions involve regulations promulgated by the Commissioner of Immigration and Naturalization governing procedures in deportation cases and the powers of Service officers with respect to such cases. The authority of the Commissioner to adopt such regulations cannot be seriously disputed.[4] What confronts us is the proper construction of those regulations.

Originally, the special inquiry officer did not fix the time for voluntary departure, since the regulation empowered him only to authorize voluntary departure "within such time and under such conditions as the district director shall direct," 8 CFR 244.1 (1968 Supp.). District Directors were given unreviewable authority to rule on requests for extension of voluntary departure time, 8 CFR 244.2 (1968 Supp.).

Effective March 15, 1968, these regulations were amended, 33 Fed. Reg. 2381 (January 31, 1968). As amended, 8 CFR 244.1 now provides that the special inquiry officer may authorize voluntary departure "within such time as may be specified by the special inquiry officer when first authorizing voluntary departure and under such conditions as the district director shall direct." Amended 8 CFR 244.2 now provides that, "Authority to extend the time within which to depart voluntarily specified initially by a special inquiry officer . . . is within the sole jurisdiction of the district director." As heretofore, the District Director's decision is not appealable.

Conflicting views have been expressed among Service officials (including special inquiry officers) as to the effect of these amendments upon the powers of special inquiry officers. It has been argued that the amended regulations were designed to divest special inquiry officers of their power to reopen under 8 CFR 242.22 for the limited purpose of considering a new grant of voluntary departure to an alien who had permitted a prior grant of that privilege to expire. Under the restricted construction thus contended for, the defunct privilege could be resurrected only by a District Director, through the device of a *nunc pro tunc* extension of the already expired departure time, pursuant to the au-

---

[4] See Immigration and Nationality Act, sections 101(b)(4), 103(a)(b), and 242(b); 8 CFR 2.1.

thorization spelled out in the internal Service instructions referred to in footnote 3, *supra*.

The construction of administrative regulations calls into play the same rules of interpretation as are applicable to the construction of statutes. Like statutes, administrative rules must be construed to effectuate the intent of the enacting authority. We must look to the plain meaning of the language of the regulation and to the purpose behind its promulgation, *Rucker* v. *Wabash Railroad Company*, 418 F.2d 146 (7 Cir., 1969).

The language of the regulations under review does not indicate any purpose to restrict to District Directors the renewal of the voluntary departure privilege, to the exclusion of special inquiry officers. The General Counsel asserts that the 1968 amendments were designed to increase the special inquiry officer's authority, not to diminish it. This conclusion is supported by the meagre documentary evidence available as to the origins of the amendments.[5] We may safely assume that, in view of the contrariety of opinion heretofore expressed, the General Counsel made due inquiry of those in the Service responsible for the promulgation of these regulations, including the Commissioner, before representing to us what their underlying purpose was. In appraising the Service's regulations, we should ordinarily give the Commissioner's words the meaning he tells us he intended they should have, especially where, as here, they are reasonably susceptible of such a construction.

We conclude that the special inquiry officer correctly held that he had power to reopen and to grant voluntary departure under these circumstances.

There is still a distinction, however, between the authority to grant voluntary departure and the authority to specify the terms and conditions of that privilege. The amended regulation empowers a special inquiry officer to specify the limits of the departure time "when first authorizing voluntary departure." A reasonable construction of this language would be that the special inquiry officer is not permitted to fix the departure time when again authorizing voluntary departure, this being left for the District Director, as heretofore. The Service now urges this view upon us

---

[5] They appear to have their genesis in a letter dated March 1, 1967 to the Commissioner from the Association of Immigration and Nationality Lawyers, recommending that special inquiry officers be given greater authority in this and other regards. The letter was published in the Association's *Immigration Bar Bulletin*, Vol. XX, No. 1, January–June, 1967, pp. 5–6.

and we think it is correct. Accordingly, we now hold that the special inquiry officer erred in fixing the departure time in this case.

Conceding that the special inquiry officer had authority to grant voluntary departure anew, the General Counsel contends that this relief should have been denied in the exercise of discretion. He points to the troublesome enforcement problems presented by deserting crewmen and to the Board's long-standing policy not to grant voluntary departure to a crewman a second time "in the absence of very strong and persuasive reasons," *Matter of M—*, 4 I. & N. Dec. 626 (BIA, 1952).

While the roles of this Board and of the special inquiry officers are essentially adjudicative in nature, we cannot ignore the effect of our decisions on the enforcement of the immigration laws. In determining whether or not to grant discretionary relief from deportation, one of the elements to be considered is whether a grant will encourage other aliens similarly circumstanced to violate the laws. This Board long ago pointed out that under some circumstances effective administration of the immigration laws may require an outright denial of voluntary departure in the first instance, *Matter of D—F—*, 4 I. & N. Dec. 589 (A.G., 1952).

Voluntary departure is beneficial both to the Service and to the alien; but if the alien does not depart promptly, as contemplated, the Service becomes involved in further and more costly procedures by his attempts to prolong his illegal stay here and the original benefit to the Service is lost. If, after years of obstruction and delay, the alien is again rewarded with the opportunity for voluntary departure which he has previously spurned, what incentive is there for any alien similarly circumstanced to depart promptly when first given the opportunity? A reasonable rule to apply in crewman cases would be that ordinarily voluntary departure should not be granted anew in the absence of strong extenuating circumstances, such as the presence of close family relationships in this country, or where it appears that the failure to depart was due to circumstances beyond the respondent's control.

It has been contended, in this and other cases, that the Service has abruptly and without notice changed its policy with regard to voluntary departure in crewman cases; and that it is unjust to apply the new policy to crewmen who had failed to depart on advice of their attorneys, who relied on the continuance of the former policy. It has been alleged that before June, 1969 District Directors invariably restored voluntary departure, by the *nunc pro tunc* device above referred to, whenever a crewman showed

**533**

he had the documents and transportation needed for immediate departure.

We need not inquire whether these allegations of an invariable practice are correct. It seems clear, from the change effective July 30, 1969 in the Service's Operations Instructions referred to in footnote, 3, *supra*, that there has indeed been a switch in Service policy. It would be wholly unrealistic, however, to expect the Service to adhere to old enforcement policies in the face of changed enforcement problems. In exercising discretion, the special inquiry officers and this Board are entitled to take into account the enforcement needs of the Service in the light of changing circumstances.

Each case must, of course, be determined on its own facts and in exercising his discretion the special inquiry officer must appraise the factors which led to the delay. Litigation, whether administrative or judicial, usually results in some delay. Yet, as the special inquiry officer in this case pointed out, not all litigation is by that token frivolously dilatory.

The special inquiry officer has concluded that the respondent could reasonably have construed the Service letters concerning the private bills as extensions of voluntary departure time, and that respondent's failure to depart under these circumstances cannot be considered a deliberate defiance of constituted authority. It cannot be said, of course, that the Service letters must be construed as misleading in all circumstances. In this case, however, in view of the peculiar facts and the chronology of the events, we cannot say that the special inquiry officer's conclusion was without foundation. We will, accordingly, not disturb his grant of voluntary departure in this case. We must remand, however, for the entry of a proper order with respect to the time and conditions of departure.

**ORDER:** It is ordered that the proceedings be remanded to the special inquiry officer for the entry of an order consistent with the views expressed in the foregoing opinion.